It was conceded upon the argument and held upon the trial, that the only ground upon which a recovery by the plaintiff could be sustained, was by virtue of the provisions of the clause of section 4, 1 Revised Statutes, 603, in substance as follows: It shall not be lawful for any incorporated company to make any transfer or assignment in contemplation of the insolvency of such company, to any person or persons whatever. The action was for money paid by the bankrupt (the Central Bank) to the defendant, upon its checks drawn upon the former for a balance due from it to defendant, *Page 9 
arising from collections made for it. The payment was made through the clearing-house by the Marine Bank as agent for the Central for such purposes, in the usual course of business. Some discussion of the point whether such payment was to be regarded as made upon the 30th July, 1870, or not until the first of August thereafter, was had upon the argument, but I do not regard this as material, as the proof showed that the Central Bank continued its business until the afternoon of August first, and the payment at all events was made while such was the case. The proof showed that the Central Bank was insolvent on the thirtieth of July, and had been so for some considerable time previous thereto, which was probably known to its managing officers and agents, but nevertheless it continued its business of banking the same as though in a sound and prosperous condition. The payment for the purpose of determining the construction of the statute in its application thereto, I shall regard the same as if made by the Central Bank over its counter upon the check of a depositor wholly ignorant of its financial condition upon the first of August, while it continued to transact its ordinary business. This is as favorable to the plaintiff as any view of the transaction will warrant. The question is whether a payment so made by a banking association organized under the general law of the State, is made void by the clause in question, and the money so paid can be recovered from the creditor by a receiver subsequently appointed under the State statute or an assignee under the United States bankrupt law. Such recovery would seem to be precluded by the language of the clause, which is that it shall not be lawful to make any transfer or assignment in contemplation of insolvency to any person or persons whatever. How can a payment or sale made in the ordinary and usual course of business by the company, one which would have been made had the company been prosperous and solvent, be said to have been made in contemplation of insolvency, although the company was at the time insolvent, which was known to its officers? The act being done in the *Page 10 
ordinary and usual course of business by the company, uninfluenced by the state of its pecuniary affairs, it cannot be said to have been done in contemplation of any particular condition of such affairs. In considering the question, I include sales made in the ordinary course of business, for the clause operates to make such acts void equally with payments, if it makes either void. There is no provision validating the former in behalf of bona fide purchasers, such as is made by section 8, 1 Revised Statutes, 591, of the act relating to moneyed corporations. This is a strong reason for holding that the clause in question does not include sales made in the usual and ordinary course of business, for it is of much more importance to protect these when made by manufacturing and many other corporations, than those made by moneyed.
The counsel for the respondent claims, that it has been determined by this court that the clause under consideration does make void payments in the ordinary and usual course of business by a corporation insolvent to the knowledge of its officers.Robinson v. The Bank of Attica (21 N.Y., 406), and Brouwer
v. Harbeck (5 Seld., 589), are relied upon to sustain the position. Although the note of the reporter in the former appears to sustain the position of the counsel, an examination of the facts showed that the case was not one of payment made in the ordinary and usual course of business. The insolvent corporation (the Hollister Bank) became indebted to the Attica Bank on the 28th day of August, 1857, upon two drafts, one maturing September third and the other upon the fifth of the same month. On the twenty-ninth of August, the Hollister Bank became insolvent and never resumed business thereafter. On the thirty-first day of August, the payment was made by a transfer of notes which had been discounted by the Hollister Bank, and a small amount of money. It further appeared that the Bank of Attica had knowledge sufficient to put it upon inquiry as to the solvency of the Hollister Bank. This clearly was not a payment made in the usual course of business. *Page 11 
The creditor was sought out by the debtor before the debt became due and payment made, not in cash, but by transferring notes discounted by the debtor. This, when the debtor was a banking association, was, of itself, strong evidence of insolvency; and when from other evidence this fact was proved, required a finding by the referee, as was held by this court, that the payment was made by the debtor in contemplation of insolvency. The present is a case of payment in the usual course of business, and the case cited does not apply to this or to a sale so made. Brouwer v.Harbeck was a case depending upon the construction of section 9, 1 Revised Statutes, 591, a statute which does not apply to the present case. (Robinson v. The Bank of Attica, supra; Belden
v. Meeker, 47 N.Y., 307.) Section 9 declares invalid all conveyances, payments, etc., made by the corporation when insolvent or in contemplation of insolvency, with intent of giving a preference to a particular creditor over other creditors. This, it will be seen, does not include a payment in the usual course of business, like the one in the present action. It was held in Brouwer v. Harbeck (supra), that a payment made by an insolvent corporation, or one made in contemplation of insolvency, where the intention of the corporation was to give a preference to a particular creditor, was void irrespective of the questions whether the insolvency was open and notorious, and whether the party receiving the payment knew of the insolvency or this particular motive of the corporation in making the payment. A payment made with a view of giving a preference to a particular creditor is one rarely if ever made in the usual course of business. In such a case the creditor will usually be sought out by the debtor and payment made by an unusual transfer of assets, as in the case of Robinson v. The Bank of Attica. In the present case all the evidence tended to show that the payment was made in the usual course of dealing between the Central Bank and the defendant, and would have been made in the same way had the Central Bank been entirely solvent and its *Page 12 
affairs prosperous. Such a payment cannot be said to have been made in contemplation of insolvency.
As this will probably terminate the litigation in this case, a determination of the other questions discussed by counsel, is unnecessary.
The judgment appealed from must be reversed and a new trial ordered, costs to abide the event.
All concur.
Judgment reversed.