## THE NATIONAL BROADWAY BANK, APPELLANT, *v.* THE WESSELL METAL COMPANY AND OTHERS, RESPONDENTS.

*Corporations — a transfer in contemplation of insolvency, void — what amounts in law to such a transfer.*

One Riggs, the secretary of an insolvent corporation, in accordance with an understanding with it, began, on June 1, 1889, an action against the corporation upon its note, in which an offer of judgment was made by the corporation, and on which judgment was entered against it on June eighth  On that day execution was issued and returned unsatisfied, although the corporation then had property sufficient to pay Riggs.  An action was at once begun upon Riggs' judgment to sequestrate the property of the corporation, and on June tenth a temporary receiver thereof was appointed.  The attorney for the corporation actually prepared the papers in the Riggs action, although he did not appear as attorney of record.  The receiver subsequently sold the property of the corporation, which Riggs purchased at a wholly inadequate price.

On June 14, 1889, the National Broadway Bank had recovered a judgment against the corporation, to avoid a levy being made under which there was evidence tending to show that the proceedings in the Riggs action had been taken.

In an action brought to set aside the proceedings had in the *Riggs* case as collusive:

*Held,* that the whole transaction amounted to a transfer of the property of the corporation to Riggs, and that such transfer violated the provisions of the Revised Statutes (pt. 1, chap. 18, tit. 4, § 4), which forbids any transfer or assignment by a corporation, in contemplation of insolvency, and declares the same to be utterly void.

That it was immaterial that Riggs' debt was a *bona fide* obligation of the corporation, or that the corporation sought the appointment of a receiver in order to divide its assets ratably among all its creditors.

APPEAL by the plaintiff, the National Broadway Bank, from a judgment, entered in the clerk's office of the county of New York on the 4th day of March, 1890, dismissing the complaint, with costs; also from an order, entered in said office on the 21st day of February, 1890, granting an extra allowance to the defendants, the Wessell Metal Company and Karrick Riggs; and also from an order, entered in said office on the 27th day of February, 1890, granting such an allowance to the defendant George W. Van Sicklen, as receiver of said Wessell Metal Company.

One Riggs, the secretary of an insolvent corporation, in accordance with an understanding with it, began, on June 1, 1889, an

action against the corporation upon its note, in which an offer of judgment was made by the corporation, and on which judgment was entered against it on June eighth. On that day execution was issued and returned unsatisfied, although the corporation then had property sufficient to pay Riggs. An action was at once begun upon Riggs' judgment to sequestrate the property of the corporation, and on June tenth a temporary receiver thereof was appointed. The attorney for the corporation actually prepared the papers in the Riggs action, although he did not appear as attorney of record. The receiver subsequently sold the property of the corporation, which Riggs purchased at a wholly inadequate price.

On June 14, 1889, the National Broadway Bank had recovered a judgment against the corporation, to avoid a levy being made under which there was evidence tending to show that the proceedings in the Riggs action had been taken.

*W. F. MacRae,* for the appellant.

*E. D. Worcester, Jr.,* for respondent Wessell Metal Company.

*Thorndike Saunders,* for respondent Karrick Riggs.

*John J. Gleason,* for respondent George W. Van Siclen, receiver.

Barrett, J.:

The real question in this case is, whether the directors of an insolvent corporation have a right, by improper indirection, to prevent an honest creditor from obtaining the preference which his diligence entitles him to. To put it more fully and precisely, have these directors a right to secure equality of distribution for all the creditors by means, other than those pointed out by the various statutes regulating their duties and powers, and which, apart from the object sought to be obtained, would clearly be irregular and a fraud upon the law?

That it is not their duty to take measures to procure a disposition of the company's property among the creditors, without preference, was expressly held in *Varnum* v. *Hart* (119 N. Y., 105). "They may," says Earl, J., "like an insolvent person, permit the creditors to take hostile proceedings, and allow those to obtain preferences who are the most vigilant. The statute places no restraint whatever

upon the creditors, and they are permitted to pursue their remedies in all the ways allowed by the law and to procure satisfaction of their claims if they can."

But while no such duty is imposed upon the officers of a corporation, there can, of course, be no objection to any lawful act on their part tending to effect equality of distribution. The statute (R. S., pt. 1, chap. 18, tit. 4, § 4) is aimed at an unjust discrimination by the company or its officers among the creditors of an insolvent corporation, and these officers cannot be condemned for any lawful or proper effort to prevent one creditor from obtaining an advantage over the rest. We think, however, that the officers are limited to such direct remedies as the statute affords, or at least to such methods as may be pursued without an abuse of the forms of law, and that they cannot effect their ends by legal shams or other improper indirection. If the authority conferred by the statute, or the remedy afforded by a proper use of some of its provisions, is insufficient to prevent an impending preference by judgment and execution, the officers must submit. However pure their motive, they cannot, to effect their end, transgress the law, or by an abuse of its forms and processes work an equity for which the legislature has made no provision.

Speaking of the legislative purpose to prevent "unjust discrimination," EARL, J., in the case cited, observed that it "was to be accomplished in only one way, to wit: *by restraint upon the action of the corporation and its officers.* They having the best and the earliest knowledge of the actual or impending insolvency were not to transfer or assign any of its property, so as to give any preference or advantage therein to any person; but the purpose was in such cases *to leave the property to be taken or disposed of by due course of law.*"

The officers of a corporation must not be wiser or more just than the law. When they find what they imagine to be a *casus omissus*, they must not attempt to supply the remedy by artifices foreign to the statute, and which, but for an undoubtedly good motive, would be morally, as well as legally, corrupt and fraudulent. Let us apply these principles to the facts of this case. The present plaintiff had sued the defendant company and the directors found themselves face to face with an impending judgment and execution. What

were they to do? The company had personal property amply sufficient to satisfy the impending execution. The directors could let the law take its course, and they were under no legal obligation to do otherwise. They could not stop the plaintiff by any remedy pointed out in the statute. Proceedings for the voluntary dissolution of the corporation would not have authorized an injunction until final order. (*Matter of E. M. Boynton Saw and File Company*, 34 Hun, 371; *In re Waterbury Trustees*, 8 Paige, 380.) Proceedings founded upon the company's insolvency could not have been instituted for upwards of a year. The statute gave them no general power to apply to the court for an injunction and receiver because of the insolvency of the company or because creditors were menacing it. It is well settled that the court could not, under such circumstances, aid the directors by virtue of its general or inherent powers, for whatever power there is is purely statutory. Nor could the directors prevent the collection of the plaintiff's debt by making a general assignment for the equal benefit of all the creditors, as the statute expressly forbids the making of any assignment whatever, preferential or non-preferential.

The device, then, and the sole device at hand, was to obtain a receiver in sequestration proceedings under section 1784 of the Code. But the right to institute proceedings under this section was not conferred upon the directors. They could only invoke the remedy indirectly, namely, by an arrangement with a judgment-creditor. This proceeding, however, plainly excludes a case where the company, though insolvent, is possessed of sufficient property, real or personal, within the county where it transacts its general business, or where its principal office is located, to satisfy the judgment-creditors' execution. It is a proceeding looking solely to the sequestration of such assets of the company as are not leviable. It thus contemplates the possibility of the very preference by due course of law which the directors desired to prevent. For it is only when the vigilant creditors have had all the tangible property of the company, within one or the other of the specified counties, applied upon their executions, and there is still a balance unpaid thereon, that the court is authorized to appoint a receiver. And it is only the assets which are left, after the application, thus preferentially, of the tangible

property, that are to be distributed in the sequestration proceedings equally among all the creditors. In the present case the directors arranged, we might, without intending any reflection upon their good motives, say colluded, with one of their number, Mr. Riggs, who was also the secretary of the company, to confess judgment in his favor, "for the purpose," to quote the resolution of the board, "of at once placing the company in the hands of a receiver in order, equitably, to protect the interest of all creditors." Mr. Riggs had an entirely *bona fide* claim against the company, and there can be no question on that head. It was a debt, however, which the statute expressly forbade the company to pay (after its notes had gone to protest) by the assignment or transfer, directly or indirectly, of any of its property. And although Mr. Riggs might have lawfully proceeded to judgment upon his claim, any levy thereunder would have been a fraud upon the statute, and such levy would have been treated as void. (*Kingsley* v. *First National Bank of Bath*, 31 Hun, 337.)

Thus the statutory prerequisite to sequestration proceedings was intended to be, and was, a mere form, for Mr. Riggs frankly avowed that he had no intention of levying under his execution, and that his sole object, and that of his fellow directors, was a mere nominal compliance with the law, which required that such an execution should be returned unsatisfied in whole or in part. In other words, the purpose was to proceed by means of an avowedly false return, for there was ample property to satisfy Mr. Riggs' execution. There was also enough to satisfy the plaintiff's execution, even if Mr. Riggs had proceeded under his. Mr. Riggs' judgment was for $4,108.70, while the two judgments recovered by the plaintiff amounted to $6,100. The tangible property was subsequently sold by the receiver appointed in the sequestration proceedings to this very Mr. Riggs for $10,000, which is but $175 less than the total amount of all the judgments; and this sum of $10,000 was but a fraction of the real value of the property. The receiver reported to the court that, although no fraud or deception was practiced on the sale, the price was grossly inadequate, so much so that, as an officer of the court, he would not carry out the sale, because of the "great hardship" and "actual injustice to the creditors of the company;" and, in fact, he refused to do so until directed by the court.

The sequel is thus a singular commentary upon the high-sound-

ing professions of all concerned, and it illustrates what not unfrequently happens when, to avert some pretense or assumption of evil, the machinery of the law is diverted from its precise statutory uses. What, in the end, was accomplished here was the practical preference of Mr. Riggs. His judgment was for but a fraction of his claim against the company. In fact, the company owed him some $30,000, and the property he has thus secured (even at the valuation put upon it by the president, Mr. Wessell, in his affidavit in the sequestration proceedings) is worth far more than that sum. We are quite aware that this action is not to set aside this sale, nor to hold Mr. Riggs as a trustee with regard to his purchase, and these facts are only adverted to because they prove, with incisive clearness, the character and extent of the sham which permeated these proceedings throughout. They show most conclusively that if Mr. Riggs' judgment and execution had been enforced, if the sheriff had been permitted to do his ordinary duty and to respect the command of the writ, the present plaintiff, though following that confessed judgment, would have collected every dollar of its execution. It was only because Mr. Riggs' judgment *could not be legally enforced that it was confessed ;* only because the sheriff *was not to make the amount of the execution that it was issued.* In Freeman on Executions the learned writer says (p. 216) that, " According to a very considerable preponderance of the authorities no actual intent to hinder, delay or defraud any one (in the issuing of an execution) need be shown. An execution and its lien may be avoided by such conduct on the part of the plaintiff as shows an improper use of his writ, though. the motives influencing such conduct, instead of being fraudulent, were grounded on kindness and charity toward the defendant, *and free from the slightest design to injure others. The only proper use of an execution is to enforce the collection of a debt,* and to enforce it with a considerable degree of diligence. To employ it for other objects is inconsistent with its nature, and such a perversion from its legitimate purpose as brings it under the penalty prescribed by the statute of Elizabeth." (See, also, *Smith* v. *Erwin,* 77 N. Y., 471, and *Forbes* v. *Waller,* 25 id., 430.)

Thus it may fairly be said that the plaintiff here has been frustrated *solely by the acts of the parties, not* by the true or genuine operation of the law. The statute has simply been diverted

from its natural and well-defined channel and made to serve the defendant's purposes.   The entire proceedings were actually instituted, conducted and carried through by the defendant company.   Mr. Riggs was, in fact, but the name in which the company applied for sequestration against itself.   His participation in the matter was, it is true, active and personal, but it was at all times _jointly_ with the company and its directors and attorney.   This is apparent from the findings of the learned judge at Special Term. They are as follows :

" _Thirteenth._ The action in which said judgment of Riggs was recovered was commenced by the drawing of a summons and complaint in the name of Karrick Riggs against said Wessell Metal Company, by one E. D. Worcester, Jr., an attorney-at-law, and a director of said Wessell Metal Company, who procured the same to be subscribed by one D. Frank Lloyd as said plaintiff's attorney, on the 29th day of May, 1889 ; a notice of appearance for said Wessell Company was written out by said Worcester, and the name of his firm, Saunders, Webb & Worcester, subscribed thereto by him on June 3, 1889, and an offer of judgment for $4,000 and interest was written out and prepared by said Worcester and executed by said Wessell Metal Company, and dated as of June 8, 1889, and an acceptance of said offer was written out and prepared and dated as of said June 8, 1889, by said Worcester, and subscribed by said Lloyd.

" _Fourteenth._ That said Worcester wrote out a form of judgment, and on said June 8, 1889, caused to be put together and filed with the clerk of the city and county of New York said papers in said action, and thereupon judgment was entered on said day with said clerk therein, in the name of Karrick Riggs against the Wessell Metal Company, at the hour of eleven o'clock and twenty-one minutes, for the sum of $4.075.

" _Seventeenth._ That after the return of said execution as aforesaid, defendant Karrick Riggs began an action to sequestrate the property of said defendant company, being the same action in which the defendant George W. Van Siclen was appointed receiver.   That the summons and complaint therein were prepared by said Worcester in advance of June 8, 1889, and were subscribed by Saunders, Webb and Worcester as attorneys ; and on said day an order was obtained by said Worcester to show cause, returnable on the 10th day of June,

1889, for the appointment of a receiver of said defendant company's property ; and on said return day an order was made for the appointment of the defendant George W. Van Siclen as such receiver."

Mr. Worcester was the attorney for the company. His firm were its attorneys of record in Mr. Riggs' common-law action, and they were Mr. Riggs' attorneys of record in his sequestration action. Although Mr. Floyd was nominally Mr. Riggs' attorney in the common-law action, yet it was Mr. Worcester who procured his signature to the various papers, who handed the execution to the sheriff and who directed that officer to return it forthwith. It was also Mr. Worcester who moved the resolution in the board of directors authorizing the president to confess judgment to Mr. Riggs, and who moved a subsequent resolution authorizing the president to consent *to the appointment of Mr. Riggs*, or any other proper person, *as receiver.* Nearly every word in both records, the common-law action and the sequestration proceedings, was written by Mr. Worcester, and his firm moved the court for the appointment of the receiver. Mr. Van Siclen was appointed upon the written suggestion of Mr. Riggs, and upon the consent of the defendant corporation. It is not too much to say, therefore, however it may appear in form, that this company *applied for its own sequestration and obtained its own receiver.* If such proceedings as these are to be sustained, what, then, becomes of the statute forbidding an assignment or transfer of any kind, even non-preferential, in trust for creditors? What have these gentlemen effected if it be not the transfer thus forbidden? Formally, the transfer is by operation of law; substantially, it is by their own act. It was held in *Kingsley* v. *First National Bank of Bath* (*supra*) that a corporation by offering to " allow judgments to be taken against it (in certain actions) before its time to answer therein had expired, in effect transferred and assigned its property, in contemplation of insolvency, in violation of section 4 of title 4 of chapter 18 of part 1 of the Revised Statutes, and that the judgments entered upon such consent were thereby avoided and rendered of no effect."

BARKER, J., speaking for the General Term, said that " there is no real distinction between a conveyance or transfer, directly from the corporation to its creditor, and one from the sheriff by means of legal proceedings against its property. The sheriff realizes the

money by a sale of the property, and hands the same over to the creditor, with the consent of the debtor. In the eyes of the law it is a sale, with the consent of the latter, for the purpose of paying his debt. *A perfect levy upon property by execution, issued on a valid judgment, followed by a sale, is, in every sense of the term, a transfer of the property to pay the judgment.*"

The decision against confessed judgments in that case was not placed solely upon the ground that a preference was thus effected. That ground was specially applicable to officers of the company. But the court, in what we have quoted, was considering the cases of ordinary creditors, and the decision was expressly placed upon the ground not merely of a preference, but of *what amounted in law to a transfer or assignment of property forbidden by the statute.* This is evident from Mr. Justice BARKER's subsequent language. "The statute," he says, "declares the assignment or transfer void, in case the same is made in contemplation of insolvency. The question to be determined is not one of fraud, or of an intent on the part of the creditor to obtain a preference in the payment of his debt; but the simple inquiry is, was there actual or contemplative insolvency and a transfer of property for the benefit of creditors. If both these acts are established, then the transaction is void." (And he cites *Brouwer* v. *Harbeck,* 9 N. Y., 589; *Harris* v. *Thompson,* 15 Barb., 62, cited and approved in *Sibell* v. *Remsen,* 33 N. Y., 96; *Robinson, as Receiver,* v. *The Bank of Attica,* 21 id., 406; *Dutcher* v. *Importers and Traders' Bank,* 59 id., 5; Bump on Fraudulent Conveyances, 256; *In the Matter of Hurst, an Insolvent Debtor,* 7 Wend., 239.)

The question, then, is unimportant whether by means of the confession and subsequent proceedings there was a transfer for the benefit of a particular creditor or of creditors generally. Any transfer is forbidden, and if, in fact, such transfer was effected without direct statutory authority, and without even the genuine application of a judgment-creditor, operating in good faith under the provisions of the statute as to sequestration, such transfer is unauthorized and void; and being unauthorized and void, it is, in law, a fraudulent obstruction to the plaintiff's judgment and execution. We do not mean to intimate that in the sequestration proceedings the court had not jurisdiction, nor do we doubt that the defendant

company could waive all objections to the proper return of the execution. (*Whittlesey* v. *Frantz*, 74 N. Y., 456.) We lay no technical stress upon the admitted fact that the sequestration action was actually commenced before the execution was returned. The return of an execution unsatisfied is undoubtedly a jurisdictional prerequisite to sequestration proceedings, but the company could waive the point. It could even admit the false allegation that the execution had been returned before the commencement of the action, and a third person in a collateral suit could not question the jurisdiction acquired by such admission. The plaintiff's rights in this action do not depend upon the question of jurisdiction at all, nor has the company's waiver of technical difficulties anything to do with it. The question is as to the acts of the parties within the jurisdiction, and how the exercise of jurisdiction was set in motion and utilized. The defendant seems to think that the *bona fides* of Mr. Riggs' claim is the only important factor, and that when that is conceded all else is condoned. Their position, however, would be but little worse in principle if Mr. Riggs' claim had not been *bona fide*. He could still have alleged (we will assume in an unverified complaint) a *bona fide* debt, the company could have admitted it, and judgment could have been taken on the admission or upon an offer. Now, if this proceeding were attacked, the same argument could be made — our object was not to collect a debt at all, but to effect an equal distribution of property. And, after all, what harm have we done? It was for the corporation, not you, the aggressive pursuing creditor, to complain if the alleged debt was assailable. If the company was satisfied and the court had jurisdiction of parties and subject-matter, that is the end of it. You cannot attack our proceedings collaterally. We have prevented an unjust preference and the means adopted are immaterial. Anything to prevent the collection of a preferential judgment.

Such a doctrine would lead to perpetual evasions of the statute and in the end to its practical nullification. Our judgment, then, rests on no narrow or technical point, but on the broad ground that *unlawful means* were here used to effect a *forbidden end*, namely, the means of a collusively confessed judgment, an equally collusive execution, issued as a sham and returned as a sham, followed by sequestration proceedings founded upon these shams, instituted by

the defendant company against itself through its own counsel, all to effect *the end* of a practical transfer by the directors themselves (using the court as their agent, and moving it with apparent frankness, but real concealment and deception) to an official trustee (of their own selection) for the benefit of creditors. We think the plaintiff was thus, in a legal sense, hindered, delayed and defrauded and that it was entitled to proceed in the due course of law without being obstructed by the proceedings in question.

The judgment should, therefore, be reversed and a new trial ordered, with costs to abide the event.

VAN BRUNT, P. J.:

I concur in the foregoing opinion, except the proposition that in this action the question of the jurisdiction of the court in the sequestration proceedings could not be inquired into, and that the defendant company could waive all objections based upon the want of return of the execution at the time the sequestration action was commenced. The authority cited, *Whittlesey* v. *Frantz* (74 N. Y., 456), does not sustain the proposition.

This was an action by the receiver of a corporation to recover a debt, and it was held that, in such an action, the regularity of the appointment of the receiver could not be called in question, as that would be assailing such appointment collaterally.

In the case at bar the sequestration proceedings are not attacked collaterally, but an action is brought to set them aside because of fraud; they are attacked directly. If the admission of the corporation that an execution has been returned unsatisfied, where, in fact, it has not been so returned, is binding in this action, then I can see no reason why sequestration proceedings may not ripen into the appointment of a receiver, which cannot be assailed, where there is not even a judgment, in fact. All that would be necessary would be to have the complaint allege a judgment and the answer of the corporation admit it, and jurisdiction would be conferred. This, of course, cannot be so. In an action brought to set aside such proceedings, jurisdiction depending upon admission can certainly be inquired into.

BARTLETT, J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.