79  107
37ap207

FRANCIS H. SALT and Others, Respondents, *v.* NATHAN D. ENSIGN, as Sheriff of Niagara County, N. Y., Appellant.

*Remedies of creditors of an insolvent corporation — not defeated by an assignment of part of the assets.*

The assets of a corporation are a trust fund for the payment of its debts in the sense that creditors of the corporation have an equitable lien upon them as well against those who are not purchasers thereof in good faith as against the stockholders of the corporation.

While a creditor of an insolvent corporation, having no other relation to it, may have a remedy by action and final process to collect his debt, such corporation cannot, in view or in contemplation of its insolvency, by voluntary transfer of its property, lawfully give preference to any of its creditors, but the mere fact that a corporation is insolvent does not necessarily render ineffectual payments out of its money or the transfer of its property in the usual course of its business.

APPEAL by the defendant, Nathan D. Ensign, as sheriff of Niagara county, N. Y., from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Niagara on the 21st day of September, 1893, upon the verdict of a jury rendered after a trial at the Niagara Circuit, and also from an order made at the Erie Special Term on the 30th day of August, 1893, and entered in the office of the clerk of Niagara county denying the defendant's motion for a new trial made upon the minutes.

*Tracy C. Becker*, for the appellant.

*E. M. & F. M. Ashley*, for the respondents.

BRADLEY, J. :

The plaintiffs charge that the defendant converted to his own use forty-eight bicycles belonging to them. The alleged defense is that the defendant, as sheriff of Niagara county, levied upon and sold the bicycles by virtue of executions issued upon judgments recovered against the Banker & Campbell Company, Limited; and that the alleged title of the plaintiffs was derived from such judgment debtor in fraud of its creditors, etc.

The Banker & Campbell Company, Limited, was incorporated March 1, 1890, under chapter 611, Laws of 1875, and its object was the purchase and sale of bicycles, tricycles, etc., and their appurtenances and the manufacture thereof.

Its place of business was the city of New York. In July, 1891, the company had become indebted to one Henry Durke, who resided at Niagara Falls in the county of Niagara, in the sum of $27,000, and in the further sum of $3,450. He in that month commenced an action to recover the $27,000, and recovered judgment therefor about the 12th day of August, 1891, and shortly thereafter execution issued upon the judgment was levied upon the stock and property of the company in the city of New York. While that action was pending, and about the first of August, pursuant to an understanding of Durke with the company to the effect that he should dispose of some of its bicycles and it would turn over the proceeds to apply upon the $3,450 debt before mentioned, he procured the plaintiffs to take and they did order from the company forty-eight bicycles, and their obligation to pay for them was turned

over to him for such purpose. The plaintiffs had an understanding with him that they would pay him from the proceeds of the sale or as they could, and such was their arrangement with him prior to the time of the purchase.

The wheels were sent to the plaintiffs and received by them at Niagara Falls, where the levy of the executions before mentioned was made upon them. They were afterwards sold by virtue of those executions by the defendant. This constitutes the alleged conversion for which the plaintiffs recovered.

The questions presented are : (1) Was the sale of the wheels made with intent on the part of the company to defraud its creditors ? (2) Was it made in contravention of the statute which provides that : " Whenever any incorporated company shall have refused the payment of any of its notes or other evidences of debt   *   *   *   it shall not be lawful for such company, or any of its officers, to assign or transfer any of the property or choses in action of such company to any officer or stockholder of such company, directly or indirectly, for the payment of any debt ; and it shall not be lawful to make any transfer or assignment in contemplation of the insolvency of such company to any person or persons whatever ; and every such transfer and assignment to such officer, stockholder or other person, or in trust for them or their benefit, shall be utterly void." (1 R. S. 603, § 4.)

At the time of this transaction of the plaintiffs through Durke with the Banker & Campbell Company, Limited, the company had been in existence less than a year and a half ; its liabilities amounted to $90,000 and its assets to less than $40,000.

The executions pursuant to which the defendant sold the property were issued upon five judgments, four of them in favor of the John Wilkenson Company upon debts contracted by the Banker & Campbell Company, Limited, in June, 1891, and the other in favor of T. Henry Sweeting in September, 1891, upon debts contracted in April, May and July, 1891. In the action in which the latter judgment was recovered an attachment was issued and levied upon the property in question in August, 1891.

The question whether the sale of the property to the plaintiffs was fraudulent against the creditors of the company was upon the evidence one of fact fairly submitted to the jury, and their conclu-

sion that it was not so was supported by evidence. A more serious question arises upon the facts in view of the statute before mentioned. The assets of a corporation are a trust fund for the payment of its debts in such sense that its creditors have an equitable lien upon them as against those who are not purchasers in good faith as well as against stockholders. (*Cole* v. *M. I. Co.*, 133 N. Y. 164.)

While a creditor of an insolvent corporation having no other relation to it may have his remedy by action and final process to collect his debt, the corporation cannot, in view or in contemplation of its insolvency, by voluntary transfer of its property, lawfully give preference to any of its creditors. (*Robinson* v. *Bank of Attica*, 21 N. Y. 406; *Varnum* v. *Hart*, 119 id. 101; *Throop* v. *H. L. Co.*, 125 id. 530; *Kingsley* v. *Bank*, 31 Hun, 329; *Nat. B. Bank* v. *W. M. Co.*, 59 id. 470; *Keiley* v. *M. & T. Bank*, 39 N. Y. St. Repr. 438.) The mere fact, however, that a corporation is insolvent does not necessarily render ineffectual the payment out of its money or the transfer of property in the usual course of business. (*Dutcher* v. *Importers'*, etc., *Bank*, 59 N. Y. 5; *Paulding* v. *Chrome Steel Co.*, 94 id. 334.)

In the former of those two cases an insolvent bank, of which the plaintiff afterwards became assignee in bankruptcy, paid the check of its depositor when the latter was ignorant of its financial condition. And in the *Paulding* case the corporation gave with the assent of the stockholders a chattel mortgage to secure the payment of moneys borrowed, but without filing written consent as required by statute applicable to corporations of that character. Five years later a new mortgage was given and the consent filed. The corporation was then insolvent. It was held that the transfer by the mortgage was not made in contravention of the statute.

In the present case the question whether the sale of the bicycles was made by the company in contemplation of insolvency was submitted to the jury with instructions that if they found the fact in the affirmative the defendant was entitled to a verdict. Although this was a question of fact the finding of the jury upon it was against the weight of the evidence.

The company was hopelessly insolvent in the sense that it had not within itself the strength to long survive its then financial con-

dition. It had in assets less than $40,000 with which to meet its liabilities, amounting to $90,000, and at that time an action was pending against it to recover $27,000. It is true that the plaintiff in that action was a friendly creditor, and very likely would have consented to withhold the execution of his judgment if an arrangement could have been made with the other creditors to permit the company to proceed, provided it should be made satisfactory to him. An unsuccessful attempt was made by the company to arrange with them for the continuance of its business. The action of Durke had then resulted in a judgment and execution, which had been levied upon the property of the company. The sale afterwards had produced only a partial payment of the amount of the judgment.

The bicycles in question were sold to the plaintiffs pursuant to an understanding between the company and Durke, by which he was permitted to find a purchaser and have the benefit of the sale by way of application of the amount of the price upon his debt against the company. He had the debt of $3,450, besides that which was the subject of the pending action. He did make the arrangement with the plaintiffs that they purchase the wheels. Thereupon they sent the order for them, the bicycles came, and they gave their notes for the amount to Durke. While this was a sale by the company to the plaintiffs, it was made through Durke and for his benefit, and when it was made the plaintiffs understood that he was to take their paper, or in some manner give them such time as was desirable for payment. It may be assumed upon the evidence that he still holds their paper pursuant to his arrangement with them.

In view of these facts and for the purposes of the question under consideration it is difficult to distinguish the transaction in its legal effect from a sale made directly from the company to Durke. He procured the sale and purchase to be made, and they were made that he as a creditor of the company should have the benefit of the sale. The whole amount of the purchase price is in the notes of the plaintiffs yet held by him. And, in view of the relation of Durke to the transaction, the making and delivery of the notes to him did not constitute a payment by them of the purchase money in the sense requisite to render them purchasers in good faith. (*Jewett* v. *Palmer*, 7 Johns. Ch. 65; *Macauley* v. *Smith*, 132 N. Y. 524.)

But it is urged that the company did not make the sale in contemplation of insolvency because it did not entirely cease business until some time after the sale, and in the meantime it called its creditors together with a view to some arrangement with them which would enable it to go on. This may have been some evidence of hope on the part of the company of the continuance of its business life. But it seems that its financial condition was apparently so hopeless as to furnish no encouragement to the creditors that anything could be realized from the adoption of the plan suggested for reorganization of the company. This was the result of the conference notwithstanding a single creditor had the levy of an execution sufficiently large in amount upon the property of the company to cover its available value. The transfer of the property in question was made for the benefit and preference of that creditor. The ability of the company to proceed much longer was known to it to be dependent upon the indulgence of its creditors. It was quite reasonable to suppose that it would not to the requisite extent be obtained. And in view of the circumstances it is difficult to see that any inference can well arise in respect to the transfer of the property so made for the benefit of the creditor Durke, other than that it was made in contemplation of insolvency, and, therefore, in contravention of the statute.

The conclusion is that the verdict was so decidedly against the weight of the evidence as to require the direction of a new trial.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Judgment and order appealed from reversed and new trial granted, costs to abide the event.