If the plaintiff in this action had attended to his duties properly as a director, he certainly must have known the nature and extent of the business that was being transacted by the board, and that unauthorized loans were being made. It would be unjust, therefore, to permit him now to take advantage of his own negligent acts, to the injury of innocent shareholders who have filed their applications of withdrawal. In Knox v. Baldwin, supra, Judge Danforth says: "A director cannot be permitted, either alone or with his associates, to pursue a remedy which, if enforced, would enable him to profit by his own wrong or negligence." The plaintiff, therefore, is estopped from maintaining this action, and must wait until the defendant collects a sufficient sum to pay his claim as provided by its constitution and by-laws. The complaint, therefore, is dismissed, with costs.

(11 Misc. Rep. 490.)

### BERWIND–WHITE COAL MIN. CO. v. EWART.

(Supreme Court, Special Term, Livingston County. February, 1895.)

1. CORPORATIONS—LIABILITIES OF STOCKHOLDERS—REPEAL OF STATUTE.

Under Laws 1890, c. 567, and Laws 1892, c. 687, repealing the provision of Laws 1875, c. 611, § 37, that stockholders shall be individually liable to creditors until the whole amount of capital stock shall be paid in, and a certificate thereof recorded, and declaring that the repeal shall not affect any liability incurred prior to May 1, 1891, failure to file such certificate does not render stockholders liable for corporate debts contracted after May 1, 1891.

2. SAME—EFFECT OF REPEAL—IMPAIRING OBLIGATION OF CONTRACTS.

The organization of a corporation is not a "contract," the obligation of which will be impaired by the repeal of the statute in force at the time of organization, making stockholders liable for corporate debts until a certificate that all the stock has been paid is recorded, as corporations take their charters subject to Const. art. 8, § 1, and 1 Rev. St. p. 600, § 8, providing that all laws under which corporations are formed may from time to time be altered or repealed.

3. SAME—ISSUE OF STOCK DIVIDENDS—EXCEEDING SAVINGS.

The issue of a stock dividend in excess of the accumulated earnings will not render the stockholders liable for corporate debts, where it appears that the directors, in making an inventory of the corporate property, acted in good faith, and did not intend to overvalue it.

4. SAME—EXHAUSTING REMEDY AGAINST CORPORATION.

Under Laws 1892, c. 688, § 55, providing that no action shall be brought against the stockholders for a corporate debt until judgment therefor has been recovered against the corporation, and execution thereon has been returned unsatisfied in whole or in part, a creditor who, after obtaining a levy on corporate property, releases the same under an agreement with the directors, forfeits his right to sue the stockholders.

Action by the Berwind-White Coal Mining Company against George S. Ewart to enforce the statutory liability of defendant as a stockholder of the Livingston County Salt Company, Limited. Complaint dismissed.

John F. Connor and E. A. Nash, for plaintiff.
J. B. & G. B. Adams and John R. Strang, for defendant.

DAVY, J. This action is brought against the defendant, as a stockholder in the Livingston Salt Company, Limited, to recover a

portion of a debt due from the company to the plaintiff, on the ground that the increased capital stock of the company had not been paid in full and a certificate filed, as required by law.    The corporation was organized in 1883, under chapter 611, Laws 1875, with a capital stock of $15,000, which was paid in full and a certificate duly filed, as required by section 37 of said act.    In 1884, the capital stock was increased to $50,000, of which $37,800 was issued and paid in full.    The plaintiff contends that, at the time this debt was contracted with the company, the whole amount of its increased capital stock had not been paid in, and that no certificate of the full payment of the increased stock had ever been filed, as required by the provisions of the aforesaid act.    The defendant claims that, at the time the indebtedness was incurred, the statute of 1875 had been repealed by chapter 567, Laws 1890, and chapter 687, Laws 1892, and that stockholders under the last-named act were only liable to creditors of the company in case the whole amount of the capital stock issued and outstanding at the time the debt was contracted had not been paid in full, and that no certificate was necessary to be filed. I am inclined to think that the defendant might claim protection under the last-named act, unless section 37, c. 611, Laws 1875, pertaining to the liability of stockholders, has been preserved by the saving clauses in the repealing acts of 1890 and 1892.    That question must be determined by the intent of the legislature.    Laws are presumed to be passed with deliberation, and with a knowledge of all existing laws on the subject.    Courts, therefore, must interpret the statute so as to carry out what appears from the context of the act to be the general policy and intent of the lawmakers. The business corporation law of 1890 (chapter 567), repealed section 37 of the Laws of 1875, and section 22 of that act provides that the repeal of a law, or any part of it, specified in the annexed schedule, which includes section 37 of the Laws of 1875, shall not affect nor impair any act done or right accruing, accrued, or acquired, or liability, penalty, or forfeiture, or punishment incurred, prior to May 1, 1891, under and by virtue of any law so repealed, but the same may be asserted, enforced, prosecuted, or inflicted as fully and to the same extent as if such law had not been repealed.    The general corporation law of 1892 (chapter 687) repealed all of the remaining sections of chapter 611, Laws 1875, which had not been repealed by the act of 1890, and section 35 of said repealing act contains a saving clause similar to section 22 of the act of 1890.    It is quite evident from the saving clauses in the above-named sections that the legislature intended to protect corporations then existing and their stockholders in every act done, and to hold them responsible for every liability incurred.    The corporation, by increasing its capital stock, under chapter 611, Laws 1875, did an act that imposed a liability upon every stockholder, and made them personally liable for the debts of the corporation thereafter incurred until the increased capital stock was all paid in and a certificate filed, as required by section 37 of said act.    In the case of Cameron v. Water Co., 133 N. Y. 341, 31 N. E. 104, it was held that, where an agreement for the consolidation of certain companies had been made three days before

the repeal of an act authorizing such consolidation, the proceedings thus commenced represented rights accruing which were passed and could be enforced as fully as if no repeal had been enacted, for the reason that the agreement was preserved by the saving clause in the repealing act. It was held in Christie v. Bowne (Sup.) 31 N. Y. Supp. 390 (Brown, P. J., writing the opinion of the court), that a stockholder is liable personally for the corporate debts, unless a certificate that the stock has been paid in full has been filed. He also says that the repeal of the act of 1875 by chapter 687, Laws 1892, does not affect the plaintiff's cause of action; that it was preserved by section 35 of the saving clause of the repealing act. Jones v. Publishing Co. (Sup.) 30 N. Y. Supp. 335; Cochran v. Wiechers, 119 N. Y. 402, 23 N. E. 803. In Dobbins v. Bank, 112 Ill. 553, it was held, where a statute on the same subject repeals the former law, with a saving clause in the repealing section as to an existing suit or litigation, that the saving clause includes the issuing of an execution, because it is the final step in the suit. The final step to be taken by the corporation in this case to protect the stockholders from liability is the filing of a certificate, which cannot be done until the increased capital stock is paid for in full.

The learned counsel for the plaintiff also contends that, when the corporation was organized, the stockholders mutually agreed to contribute their money for carrying on the business, and that that agreement constituted a "contract," within the meaning of the federal constitution, which provides that no state shall pass any law impairing the obligation of contracts, and therefore the legislature could not constitutionally repeal the act of 1875, so as to relieve the stockholders from personal liability for the debts of the company until all of the increased capital stock was paid for and a certificate filed, as required by section 37 of said act. Upon this point I do not fully agree with the views of the learned counsel, which have been so ably and ingeniously presented. It appears that, when the corporation was organized, it took its charter subject to the provisions of section 1, art. 8, of the state constitution, which provides that:

"Corporations may be formed under the general laws, but shall not be created by any special act, except for municipal purposes, and in cases where, in the judgment of the legislature, the object of the corporation can not be attained under general laws. All general laws and special acts passed pursuant to this section may be altered from time to time or repealed."

It also took its charter subject to the provisions that were contained in title 3 of chapter 18 of the first part of the Revised Statutes,[1] which provides that:

"The charter of every corporation that shall hereafter be granted by the legislature shall be subject to alteration, suspension or repeal, in the discretion of the legislature."

Under this reserved power, it has been held to be within the province of the legislature to impose liabilities upon stockholders, even where the act under which the corporation was organized expressly exempted the stockholder from liability. In re Lee & Co.'s Bank of

---

[1] 1 Rev. St. p. 600, § 8.

Buffalo, 21 N. Y. 9; Mayor, etc., v. Twenty-Third St. Ry. Co., 113 N. Y. 317, 21 N. E. 60.    It is true that the legislature has no right to deprive a corporation of its property, or to cancel its contracts with third persons.    But, as remarked by Judge Earl in the case last cited, it may take away its franchise to be a corporation, and may regulate the exercise of its corporate powers.    As it has the power utterly to deprive the corporation of its franchise to be a corporation, it may prescribe the conditions and terms upon which it may live and exercise such franchise.    It may enlarge or limit its powers, and it may increase or limit its burdens.    The legislature, therefore, had the power, without violating the federal constitution, to repeal or amend laws pertaining to business or stock corporations organized under the Laws of 1875, and to prescribe the liability of stockholders in such corporations to its creditors for all debts contracted after the act was repealed or amended.    I am unable to discover that the repeal of the act of 1875 affected any vested rights of the stockholders.    But, independent of the reserve power of the legislature to repeal or amend the charter of the corporation, the saving clauses in the repealing acts preserved all the rights of the Livingston County Salt Company and its stockholders that had accrued prior to the repeal of the act of 1875.    People v. O'Brien, 111 N. Y. 1, 18 N. E. 692.

There is another point that was urged by the learned counsel for the plaintiff which is entitled to consideration.    He contends that the stock dividend issued to the stockholders for $7,200 was unauthorized, for the reason that the accumulated earnings of the corporation did not amount to that sum.    There can be no question but what the directors had a legal right, under the statute, to declare a dividend, providing the corporation had accumulated and added to its capital stock money or property equal in value to the full par value of the stock issued and distributed among the stockholders as a dividend.    They had no right, however, to pay any dividends, either in stock or money, unless it left the capital stock unimpaired.    It appears from the evidence that the directors made an inventory of the company's property, and it is conceded that they acted in good faith in estimating its value.    In performing this duty conferred upon them by statute, they acted upon their best judgment and knowledge as to the real value of the accumulated property.    In making the estimate, they took into consideration the large sums of money that had been expended in sinking an additional well and in purchasing machinery, and in improving the plant, and the prospect of making money in the business.    Judge Earl, in Williams v. Telegraph Co., 93 N. Y. 190, says that, if a company "can issue stock in payment of property to be obtained by it as a part of its capital for its legitimate uses, why may it not issue stock to its stockholders in payment for property in effect purchased of them, and added to its permanent capital, and which they relinquish the right to have divided?"    He also says that, "so long as every dollar of stock issued by a corporation is represented by a dollar of property, no harm can result to individuals or the public from distributing the stock to the stockholders. All that can be required in any case is that there shall be an actual

capital in property representing the amount of shares of capital stock issued." So that the question presented upon this point is whether the value of the accumulated property of the corporation was equal to the par value of the stock dividends, or whether the actual value of the stock was so disproportionate to the par value of the stock as to show a gross overvaluation of the stock, making the transfer fraudulent in law. I think it cannot be said, in view of the circumstances and the evidence in this case, that the directors arbitrarily and with knowledge overestimated the value of the property upon which the stock dividends were declared, especially when the directors shortly thereafter asked an English syndicate $75,000 for the plant.

It was remarked by Reynolds, C., in Schenck v. Andrews, 57 N. Y. 147, that:

"There is no exact mathematical value which can be applied to mines or minerals in the bowels of the earth, or to mechanical contrivances or manufacturing establishments, when their development is sought for by associated wealth. It is a matter of the commonest observation that the most intelligent and conscientious of men, upon such questions, entertain widely different opinions."

He also says that it would be a very harsh rule that would subject the stockholders to personal liability for the debts of the company if it could be maintained that the trustees had formed an erroneous judgment as to the value of the property received as a part of the capital.

The rule as to what may be taken into consideration in estimating the value of the property is very clearly stated by Judge Peckham in Gamble v. Water Co., 123 N. Y. 91, 25 N. E. 201. He says:

"When viewing the completed work, and in endeavoring to place some value upon it, we are not to be confined to the mere cost of material and the value of the labor contained in and expended upon it. A fair profit to the contractor is to be included, and the inquiry should be what, under all the circumstances, is the fair value of the property to the company, considering its proposed use and the general purpose for which the company is organized?"

There are cases which hold that, in the absence of any affirmative evidence of fraud, mere overvaluation of the increased corporate property upon which the stock dividends were declared will not render the stockholders liable to the creditors of the corporation for the deficiency. Schenck v. Andrews, supra; Iron Co. v. Drexel, 90 N. Y. 94. There are also cases holding that where there was a plain case of excessive and gross overvaluation, with full knowledge of the fact, such a transaction was fraudulent in law on its face. Boynton v. Andrews, 63 N. Y. 96.

It was held in Douglass v. Ireland, 73 N. Y. 104, that a deliberate and advised overvaluation of property thus purchased and paid for is a fraud upon the law, and a violation of the condition upon which the exemption of stockholders from liability under the provisions of the original statute is made to depend. The learned judge who wrote the opinion of the court says, at page 104, that:

"The fraud is consummated by the issue of stock as full-paid stock which has not been fully paid for in value by the property for which it is issued, and it does not depend upon any fraudulent intent other than which is

evidenced by the act of knowingly issuing stock for property to an amount in excess of its value. All that is necessary to establish the legal fraud is to prove two facts: First, that the stock issued exceeded in amount the value of the property in exchange for which it was issued; and, second, that the trustees deliberately, and with knowledge of the real value of the property, overvalued it, and paid in stock for it an amount which they knew was in excess of its actual value."

Iron Co. v. Drexel, supra; Williams v. Telegraph Co., supra; Tube Works Co. v. Gilfillan, 124 N. Y. 302, 26 N. E. 538; Griffeth v. Green, 129 N. Y. 517, 29 N. E. 838; Blake v. Griswold, 103 N. Y. 436, 9 N. E. 434.

The case of Tube Works Co. v. Gilfillan, supra, cited by the learned counsel for the plaintiff, does not conflict with the above rule. Judge Vann, in his opinion, says:

"The substantial issue in this action was whether the property procured in exchange for stock was purchased at an overvaluation, not through error of judgment, but in bad faith, and to evade the statute;" citing the case of Douglass v. Ireland, supra, in support of his position.

But, in disposing of this point, I am confronted with the fact that both sides consented to submit the question of the value of the Livingston Salt Company's plant on the 1st day of April, 1886, to the jury, who found that it was only worth $35,000. Taking that sum as a basis of value, I am compelled to hold, regardless of my own views, that the directors grossly overestimated the value of the company's property at the time that the stock dividends were issued, and that the stock issued and distributed as a dividend greatly exceeded in value the accumulated property of the corporation.

There is another important question in this case which I am called upon to consider, and that is, after the evidence was closed, and the case summed up and submitted, the defendant made a motion upon an order to show cause for leave to serve an amended or supplemental answer, and to reopen the case for further proofs. It was finally agreed between counsel that the affidavits used for and in opposition to the motion might be considered by the court as a part of the evidence upon the trial, and that the answer might be amended to conform to the proofs and findings of the court. It appears from the affidavits and the evidence that on the 20th day of December, 1892, there became due and payable to the plaintiff from the Livingston Salt Company the sum of $862.06, and on January 20, 1893, the further sum of $1,837.98, and on February 20, 1893, the sum of $1,228.98; that a promissory note was given to the plaintiff by the company for $962.05, payable February 20, 1893, which was protested for nonpayment February 23, 1893. It also appears from the evidence that on that day a special meeeting of the board of directors was held, who passed a resolution to transfer a quantity of the salt in block No. 2 to T. Nelson Shattuck, which was to be applied in part payment of a precedent debt due him from the company. At the same meeting another resolution was adopted by the board transferring to Shattuck a number of accounts which the company held against various parties to the amount of $962.64. Out of this sum, $334.04 was to apply on Shattuck's account. The salt transferred to Shattuck remained in the possession of the company until it was

levied upon by the sheriff upon an execution issued by the plaintiff upon his judgment obtained against the company April 26, 1893. The salt was advertised for sale by the sheriff, but, before the day of sale, the directors entered into a contract with the plaintiff that if he would release his levy on the salt, and prosecute the stockholders for the amount of his claim, they would pay him $3,000 on his judgment against the company, providing he failed to recover that amount from the stockholders. After the agreement was executed, the levy on the salt was released, and the execution, by request of the plaintiff, was returned unsatisfied, except the sum of $426.97, which was realized out of the property belonging to the company.

I am inclined to the opinion that the sale and transfer of the salt to Shattuck, who was a director of the company, was illegal and void, under the stock corporation law of this state (section 48, c. 688, Laws 1892), which provides that:

"No corporation which shall have refused to pay any of its notes or other obligations when due, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of such property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation shall be valid."

The statute also provides that:

"Every person receiving, by means of any such prohibited act, any property of the corporation shall be bound to account therefor to its creditors or stockholders or other trustees."

It also provides that:

"Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void."

The day that the company transferred the salt to Shattuck, the plaintiff's note for $962.05 against the company was protested for nonpayment. It also had other contract obligations that were past due. These facts establish conclusively that the corporation, when it transferred the salt to Shattuck, was financially embarrassed, and unable to meet its obligations as they matured, and that it was insolvent, or that its insolvency was imminent. It would be difficult to imagine how any transaction could be brought more explicitly within the statute. The legislature has very wisely provided that no corporation which shall have refused to pay any of its notes or other obligations, when due, shall transfer any of its property to any of its officers, directors, or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. This restriction continues as long as the corporation remains in default of paying its debts; and any director or other officer who receives property from the corporation under such circumstances must account therefor to its creditors.

Judge Andrews in Throop v. Lithographic Co., 125 N. Y. 531, 26 N. E. 742, says that:

"The statute provides for two cases: First, where the corporation has refused payments of its notes or other evidence of debt, and is in default, it prohibits any subsequent assignment or transfer by the corporation or any of its officers, directly or indirectly, of any of its property, to any officer or stockholder, in payment of a debt; and, second, it prohibits any transfer or assignment whatever, on any consideration, to an officer, stockholder, or other person in contemplation of insolvency."

The learned judge, at page 533, 125 N. Y., and page 742, 26 N. E., says:

"The refusal of a corporation to pay its notes or obligations at maturity is generally a suggestion of insolvency. But whether such refusal results from a disability of a corporation to meet its obligations, or is based on other reasons, will, ordinarily, be best known to the officers and stockholders; and the law for the protection of the body of creditors against favoritism interdicts the corporation and its officers, while the default continues, for making preferential transfers of the corporate assets to officers or stocholders in payment of a debt, irrespective of the fact whether the corporation is then solvent or insolvent."

Cole v. Iron Co., 133 N. Y. 164–168, 30 N. E. 847; French v. Andrews, 81 Hun, 272, 30 N. Y. Supp. 796; Atkinson v. Printing Co., 114 N. Y. 168–174, 21 N. E. 178; Salt v. Ensign, 79 Hun, 107, 29 N. Y. Supp. 659; Kingsley v. Bank, 31 Hun, 329.

While the provision of the Revised Statutes upon which Judge Andrews' reasoning in the case of Throop v. Lithographic Co., supra, is based, has been repealed, yet section 48, c. 688, of the Laws of 1892, has been substituted in its place, which contains the same provisions in substance that the Revised Statutes contained.

The defendant also contends that the plaintiff might have satisfied his execution out of the corporate property upon which the levy was made, and therefore the return of the execution was unauthorized, and not in compliance with the requirements of the statute. The stock corporation law of 1892 (chapter 688, § 55) provides that:

"No action shall be brought against a stockholder for any debt of the corporation until judgment therefor has been recovered against the corporation, and an execution thereon has been returned unsatisfied in whole or in part."

A creditor who sues a stockholder is required to allege in his complaint that a judgment was obtained against the corporation, and that execution has been issued and returned unsatisfied in whole or in part. This provision of the statute contemplates that the creditor should first exhaust his legal remedy against the corporation before resorting to the personal liability of the stockholder. Handy v. Draper, 89 N. Y. 334.

It was held in Hardman v. Sage, 124 N. Y. 33, 26 N. E. 354, that:

"The proceeding against the corporation is only required for the benefit of stockholders, as a part of the immunity against a primary personal liability vouchsafed by law to corporators, shielding them from action until a bona fide attempt has been made and exhausted to obtain payment from the corporate property."

Braem v. Bank, 127 N. Y. 513, 28 N. E. 597.

When the plaintiff released his levy upon the salt, and caused the execution to be returned unsatisfied, in pursuance of a void agreement which he had entered into with the directors, it was an

act extremely prejudicial to the defendant and other stockholders of the corporation.

Judge Finch, in Cole v. Iron Co., supra, says:

"The assets of a corporation are a trust fund for the payment of its debts, upon which the creditors have an equitable lien, both as against the stockholders and all transferees, except those purchasing in good faith and for value."

Shattuck was not such a purchaser. He parted with nothing. He participated as one of the directors in the illegal transaction to deprive the creditors of the assets of the corporation held in trust for their benefit. So that the defendant is at liberty, in this action, to contend that the transfer of the salt was void, and that the plaintiff might have satisfied his execution out of the corporate property upon which the levy was made. It was a valid levy, and possession had been taken under it by the sheriff, who advertised it for sale, and the plaintiff had no right to abandon it at the request of the directors, without the consent of the defendant and the other stockholders of the corporation, unless he was willing to release them from the statutory liability.

The complaint, therefore, must be dismissed, with costs.