### WETSTEIN v. FRANCISCUS.

(Circuit Court of Appeals, Second Circuit. November 21, 1904.)

#### No. 45.

1. BANKRUPTCY—PREFERENCES—RECOVERY—INSOLVENCY—QUESTION FOR JURY.

In an action by a trustee in bankruptcy to recover an alleged preference, the fact of preference having been proved, evidence *held* sufficient to require submission to the jury of the question whether the preferred creditor had reasonable cause to believe that it was intended thereby to give him a preference.

In Error to the Circuit Court of the United States for the Southern District of New York.

The following is the charge of COXE, Circuit Judge, at the trial in the court below:

This action is brought by George C. Franciscus, as trustee in bankruptcy of the estate of Samuel Baerncopf, to recover of William Wetstein the sum of $5,800, with interest, being the aggregate amount of three alleged fraudulent preferences, made respectively on December 15, December 22 and December 26, 1900.

This court, as has been stated, acquires jurisdiction because of the diverse citizenship of the parties, the plaintiff, trustee, and the bankrupt, both being citizens of the state of Pennsylvania, and the defendant Wetstein, being a citizen of the state of New York. The complainant alleges, after stating the citizenship of the parties, that upon the second day of January, 1901, a petition was filed by the creditors of Baerncopf against him in bankruptcy, and thereafter, on June 3, 1901, Baerncopf was duly adjudicated a bankrupt. The plaintiff, Franciscus, was duly elected and appointed trustee in bankruptcy, and thereafter he qualified and is now acting in such capacity.

The complainant also alleges that Baerncopf was, in December, 1900, indebted to Wetstein, the defendant, in the sum of $5,800. It also alleges that on the 15th, the 22d and the 26th days of December, Baerncopf was insolvent, and so continued during the entire month. The complainant also charges that, on the 15th day of December, Baerncopf, being then insolvent, paid to the defendant Wetstein, with intent to prefer him over the other creditors, the sum of $200, and at the time that payment was made, Wetstein, the defendant, had reasonable cause to believe that Baerncopf was insolvent and intended to give him a preference over the other creditors of Baerncopf. It also charges that a demand for this sum of $200 was made and refused. There are similar allegations regarding the payment on the 22d day of December, of $500, and the payment of $5,100, upon the 26th day of December,

the allegation in each case being that Baerncopf was insolvent; that he intended to give a preference to Wetstein; that Wetstein, or his agent, knew, or had reasonable cause to believe, at the time the money was accepted by them, that Baerncopf was insolvent, and that a preference was intended.

The answer of the defendant, Wetstein, admits all of the allegations of the complaint, except that it is denied that Baerncopf was insolvent, and he also denies that the payment was preferential, or made with intent to give a preference, and he denies that he knew or had any reasonable cause to believe, that the payments were made with intent to give him a preference over the other creditors.

So, gentlemen, as to the facts disputed by the answer, there is an issue joined between these parties, and the burden of proof is upon the plaintiff, the trustee in this action, to satisfy you by a fair preponderance of evidence, that the truth of the allegations of the complaint has been established. This plaintiff must satisfy you that Baerncopf was insolvent in December, 1900; that the payment by Baerncopf was preferential, and that Wetstein knew, or had reasonable cause to believe, at the time he accepted the money, that there was an intent to give him a preference. Upon these propositions the trustee must offer evidence which in your judgment outweighs the evidence offered by the defendant, that the allegations to which I have just referred are true and have been established.

This cause of action arises under the bankruptcy act of 1898 [U. S. Comp. St. 1901, p. 3418], prior to the amendments thereto of 1903 [U. S. Comp. St. Supp. 1903, p. 409]. That act, like all bankruptcy acts, had two principal objects in view. The one was to enable an honest debtor, who had been unfortunate in business, to wipe out his indebtedness and start again; the other was to divide the estate of the bankrupt ratably, and without preference, share and share alike, among his creditors. The section under which this action is brought is section 60 [U. S. Comp. St. 1901, p. 3445], and so far as it relates to the questions we are considering here, it is as follows: "A person shall be deemed to have given a preference * * * if, being insolvent, * * * he has made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." Subdivision "b," of section 60, provides: "If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he (the trustee) may recover the property, or its value, from such person."

You will see, therefore, that in order to recover under this section 60, it is necessary for the trustee to establish two propositions: First, there must have been a transfer made while the bankrupt was insolvent, the effect of which was to enable one creditor to obtain a greater percentage of his debts than other creditors of the same class; and, second, the creditor—transferee—must have had at the time of the transfer reasonable cause to believe that the bankrupt intended thereby to give a preference.

The statute does not make preferences voidable, unless the creditor, the person receiving the preference, had reasonable cause, at the time of the transfer, to believe that a preference was intended. It is rather difficult, gentlemen, to define just what the words, "reasonable cause to believe," mean. but each case must be considered and determined upon its own facts. Reasonable cause to believe does not require proof, either of actual knowledge or actual belief, but only such surrounding circumstances as would lead an ordinarily prudent business man to conclude that a preference was intended. Reasonable cause must exist at the time of the transfer, and there must be proof, something more than a mere guess or suspicion, of the insolvent condition of the transferror at the time the transfer is made. Applying the law to the facts in this case, it is necessary for the trustee to show, first, that at the time of these payments, to wit, on the 15th, 22d and 26th days of December, 1900, Baerncopf was insolvent, and, second, that Wetstein, the defendant, or his attorney, knew, or had reasonable cause to believe, that a preference was intended.

As to the first proposition, was Baerncopf insolvent? I think you will have little difficulty in reaching a conclusion. Insolvency is denied in the answer, but it has been, practically, admitted on the trial. However, the facts show, that prior to the 26th of December, in addition to the creditors then paid, Baerncopf was indebted in the sum of about $21,000. I am only speaking now in round numbers; that, adding to this sum the amount paid to creditors on the 26th, he was indebted in the sum of about $30,000, and that upon the 26th, assuming that the appraisal of his stock was a fair one, he had only about $8,000 or $9,000 worth of property with which to pay these debts aggregating $30,000. Under this act of 1898, the test of insolvency is simply this: A person shall be deemed to be insolvent whenever the aggregate of his property, exclusive of any property which he may have conveyed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts. So it would seem, unless the appraisal of the stock was grossly inadequate, that under no theory did Baerncopf have property sufficient to pay the amount which he then owed.

Assuming that he was insolvent during all of these transactions, you then come to what I think is the crucial question, the one which I stated yesterday, at the close of the argument on the law, to be in my judgment the question upon which this controversy must be determined, and that is, did Wetstein, or his attorney, Mr. Vause, have reasonable cause to believe that Baerncopf was insolvent, and that the payments were made with intent to give Wetstein a preference? As before stated, the law provides that the person receiving the preference, or his agent acting for him, must have reasonable cause to believe that a preference was intended, and the cases construing the law make it applicable to attorneys at law who have charge of the collection of the debt. So I think it will not be disputed that the knowledge of his attorney must be imputed to the defendant in this case.

It is always difficult in these cases to prove actual knowledge, or the intent of the defendant by direct evidence, and yet, the law presumes that a person intends the legitimate and ordinary consequences of his act. An intent may often be inferred from circumstances, and, generally, in these cases, it has been held that if the jury believe that sufficient facts appear to warrant them in the conclusion that the creditor must have known or had reasonable cause to know the true condition of the bankrupt's financial affairs at the time the alleged preference was given, they are warranted in finding a verdict for the trustee. But, gentlemen, these must be facts proven, not mere conjecture, not mere guesswork, but actual facts must be established from which the jury may fairly draw the presumption that knowledge existed. There must be such a condition proved as would put a reasonable man upon inquiry and induce him to conclude that a preference was intended. Facts which merely raise a suspicion or a conjecture of insolvency, or a conjecture that he was to be preferred over other creditors, are not sufficient. If the facts proved are such that the jury can safely draw the inference of knowledge, or of a reasonable cause to believe, upon the part of an intelligent business man that his debtor was insolvent and intended to give a preference, it will warrant a verdict to that effect. Mere suspicion, mere guesswork, is insufficient.

I do not know, gentlemen, that it is necessary to say anything further upon the law. It has been stated over and over again, and I think you fully understand it. The principal question relates to the knowledge of the defendant or of his agent, which is imputed to him, as to the actual condition of Baerncopf at the time that the payments were made.

Upon the facts, therefore, you have to determine between two theories. The defendant insists that these payments were made in the ordinary course of business; that the parties were friends, Baerncopf and Wetstein; that they had come from the same country in Europe; that they had known each other for many years; that they had had long business dealings; that during all the time, although Wetstein had sold Baerncopf bills of goods and loaned him money, there had never been any difficulty about payment; that the money was to be paid in December; that the necessities of Wetstein, in order to meet his own obligations, made him unusually desirous and anxious about this money, and that the pressure, if there was any, was due to that

fact, and not from any fear of the insolvency of Baerncopf. They say that all of the inquiries which were made tended to prove Baerncopf's solvency. Wetstein himself did not go to Philadelphia, as I recall the evidence, until December 26th, and the only knowledge which he had of Baerncopf's financial condition was from the two letters, which have not been produced before you, and such information as he got from his attorney upon his return to New York on the two previous occasions. Mr. Vause says he made inquiries in Philadelphia, and that all the information which he received led him to believe that Baerncopf was entirely responsible.

In short, gentlemen, the defendant's theory is that this was an ordinary payment made in the ordinary course of business, and that there was nothing which was brought to the attention of either of the parties, the defendant or his attorney, which caused them to have the least doubt as to Baerncopf's condition. On the other hand, the trustee insists that the affair was entirely out of the ordinary course of business; that it was so extraordinary that it must have put both the attorney and Wetstein upon inquiry, and that the slightest inquiry would have disclosed the actual situation. The counsel for plaintiff has called your attention to numerous facts and circumstances of which he seeks to predicate this conclusion. He insists that the small payment upon the 15th of December, the difficulty in getting the second payment upon the 22d, the payment of the entire sum upon the 26th, there being but one business day intervening, the fact that the defendant and his attorney went to Philadelphia upon the 26th and arrived there at the time the sale to Simpson was concluded; the fact that Wetstein did not himself go into the place of business of the bankrupt; the fact that it was insisted that cash should be paid, and all the other circumstances connected with the transaction, point to the conclusion that the appointment at Philadelphia on the 26th was prearranged, and that it was the intention of Baerncopf, with the knowledge of the defendant, to prefer his favorite creditors at that time. I think, as I have said, that this is the crucial question in the case. You are to determine it as business men, without any prejudice one way or the other, solely upon the facts.

There are three causes of action, three separate claims of preference: One relating to the $200 payment, another to the $500 payment, and the third to the large payment of $5,100. The facts shown as to the defendant's knowledge differ somewhat with reference to these three payments. It may be that you may think that there is not sufficient proof of knowledge upon December 15th to warrant you in saying that the payment of the $200 was a preference. It may be you may think that there is not sufficient proof as to the payment on the 22d, and it may be, of course, that you may think that there is not sufficient proof to warrant you in saying that there was a preference at any time. I merely call your attention now to the subject, because the evidence differs somewhat, as you will see, upon these various dates. I have here a statement of the amounts paid. The amount paid December 15, 1900, was $200. The amount paid December 22, 1900, was $500. The amount paid December 26, 1900, was $5,100, making a total of $5,800. If you find that the entire amount constituted a fraudulent preference under the law, of course your verdict would be for the entire sum. If you find that the payment upon the 26th was fraudulent, but not upon the other two dates, then you will deduct $700 from the amount. If you find that the payments upon the 26th and 22d were fraudulent, and not on the 15th, then you will deduct $200. If, on the other hand, you find there were no fraudulent preferences whatever, your verdict will be simply a general one in favor of the defendant.

John A. Vause, for plaintiff in error.

A. J. Gleason, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. This is a writ of error from a judgment rendered by the United States Circuit Court for the Southern District of New York on a verdict of a jury in favor of the plaintiff below for the sum

of $6,642.29. Plaintiff sued as trustee in bankruptcy of Samuel Baerncopf to recover various sums paid to defendant below under circumstances claimed to constitute a preference under the provisions of the bankruptcy law.

It appeared from the evidence that Baerncopf and Wetstein, the defendant, were old friends; that Baerncopf resided and did business in Philadelphia and Wetstein resided in New York; that in June, 1900, Baerncopf owed Wetstein some $1,150, for which Wetstein held Baerncopf's note, payable June 8, 1900; that on said date said note was extended to December 8, 1900; that between the latter part of November and December 4, 1900, Wetstein advanced to Baerncopf some $4,000, and that when said note fell due Wetstein forthwith put his entire claim in the hands of his attorney for collection; that the attorney went on to Philadelphia, and collected $200 thereon; that on December 22d the attorney again went to Philadelphia, and collected $500, which was all that Baerncopf could then spare; that, with only one business day intervening, the attorney, on December 26th, went back to Philadelphia, taking Wetstein with him, to collect the balance of the account; that they arrived there just at the time when Baerncopf had effected a sale of his two stores to a pawnbroker for $8,444 in cash; that immediately thereafter Baerncopf met the attorney and Wetstein at Baerncopf's bank by appointment; that Baerncopf offered Wetstein a certified check in full settlement of his claim, but that Wetstein refused it, and insisted on having the money, and that Baerncopf thereupon paid defendant or his attorney some $5,000 in cash, being the full amount of the balance due on said claim.

It was admitted that Baerncopf was insolvent, and that the payment of said claim left the rest of the unsecured claims, amounting to $20,-000, wholly unpaid.

The fact of a preference having been proved, we think there was a sufficient question to go to the jury whether the defendant, by reason of the surrounding circumstances stated above, had "reasonable cause to believe that it was intended thereby to give a preference," within the prohibition of the act. Inasmuch as no exception was taken to the charge, which seems to have been quite as fair to defendant as he was entitled to, the exception on the ground that there was not sufficient evidence to go to the jury should be overruled.

The judgment is affirmed, with costs.