(118 App. Div. 281)

### WRIGHT v. GANSEVOORT BANK et al.

(Supreme Court, Appellate Division, First Department. March 22, 1907.)

1. CORPORATIONS—INSOLVENCY—PREFERENCES—SURRENDER OF COLLATERAL SECURITY.

　　Under Stock Corporation Law, Laws 1892, p. 1838, c. 688, § 48, providing that no conveyance, assignment of any property of such corporation nor any payment made when the corporation is insolvent, or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors, shall be valid, etc., a payment by an insolvent corporation representing the value of mortgages then held by the creditor as security was not preferential.

2. PRINCIPAL AND SECURITY—RELEASE OF SURETY.

　　Under said statute, where the creditor innocently receives payment from the principal debtor which he is afterwards required to repay because it constituted an unlawful preference, the debt will not therefore be considered as having been paid, so as to release the surety, and the creditor may pursue his remedy against the surety as if no payment had been made.

3. CORPORATIONS—INSOLVENCY—PREFERENCES—PAYMENT OF NOTES.

> Under said section, the payment by an insolvent corporation of notes secured by indorsement was preferential and void, where the effect of such payment was to exhaust practically all the assets of the corporation, leaving nothing for other creditors.

> Ingraham and McLaughlin, JJ., dissenting in part.

Appeal from Special Term, New York County.

Action by Edmund Wright as trustee, etc., against the Gansevoort Bank and others. From a judgment of the Special Term (103 N. Y. Supp. 47) for plaintiff, the bank appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and SCOTT, JJ.

Philip J. Britt, for appellant.
Abram I. Elkus, for respondent.

SCOTT, J. This action is brought by a trustee in bankruptcy of a corporation known as W. C. Loftus & Co. to recover from the Gansevoort Bank the sum of $15,000 and interest alleged to have been paid to that bank on the eve of the corporation's bankruptcy in violation of section 48 of the stock corporation law (Laws 1892, p. 1838, c. 688). The corporation of W. C. Loftus & Co. was engaged in the clothing business and one Thomas J. Loftus was its president, and had full authority to sign checks and notes in its name and behalf. On February 3, 1903, Thomas J. Loftus borrowed from defendant upon his own note indorsed by his wife, the sum of $5,000; the bank knowing that it was a personal loan to him. Later this note was renewed by being merged with a series of notes made by the corporation. From time to time the corporation, for business purposes made and renewed other notes, all of which were signed by the corporation and indorsed by Thomas J. Loftus and his wife. Finally, on December 2, 1903, the defendant held three demand notes of the corporation, aggregating $15,000 upon which interest was due; these notes also being indorsed by Mr. and Mrs. Loftus. On October 9, 1903, at a time when it does not appear that W. C. Loftus & Co. was insolvent, the defendant had received from Thomas J. Loftus, the president of the company as collateral security for the notes of W. C. Loftus & Co., a mortgage made by Thomas J. Loftus and Mary R. Loftus, his wife for $5,000, and an assignment of a bond and mortgage for $6,000 made by one Russell to Ellen Murtha, the assistant and bookkeeper of Thomas J. Loftus. It was assumed by the court below, and by counsel on their briefs, that, with these mortgages and the indorsement of Mary R. Loftus and a guaranty by her, the defendant's loan was fully protected and secured. It further appeared that W. C. Loftus & Co. kept a deposit account with defendant, in which had been kept a substantial balance until November 14, 1903, when the account became overdrawn by the sum of $513.59, in which condition it remained until December 2, 1903. On this latter date the corporation deposited with defendant a sum more than sufficient to make good the overdraft, and to pay the amount due upon the notes. On the same day the corporation drew and gave to the defendant bank its check on said bank for $15,594.01, and received from the bank the notes and

the collateral which had been given to secure them. On the same day the corporation drew checks in favor of three other creditors, thereby exhausting its deposit account with defendant. On the very next day a petition in bankruptcy was filed, and in due course W. C. Loftus & Co. was adjudged a bankrupt, and plaintiff was appointed trustee. It appears that the payments made by the corporation on December 2 represented the proceeds of a sale of its merchandise stock, and had practically exhausted its entire assets, leaving only about $200 to pay claims aggregating about $27,000; but this fact was not known to defendants.

The statute under which plaintiffs claims (section 48 of the stock corporation law) in so far as it is applicable to this case reads as follows:

"No conveyance, assignment of any property of any such corporation * * * nor any payment made, a judgment suffered, lien created, or security given * * * when the corporation is insolvent, or its insolvency is imminent with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. * * * Every such person receiving by means of any such prohibited act or deed any property of the corporation shall be bound to account therefor to its creditors, or stockholders or other trustees. * * * No such conveyance, assignment, or transfer shall be void in the hands of a purchaser for valuable consideration without notice."

The statute is drastic in the extreme, and applies whenever a corporation is insolvent or its insolvency is imminent, if the payment or transfer is made with intent on the part of the debtor to give a preference, without regard to the creditors intent or even his knowledge as to the actual or imminent insolvency of the debtor. Munson v. Genesee Iron Works, 37 App. Div. 203, 56 N. Y. Supp. 139. The court below found that W. C. Loftus & Co. was insolvent on December 2, 1903, and the evidence fully sustains that finding. It also found that the payment of $15,594.01 to the defendant was preferential, and awarded plaintiff a judgment for that amount.

The serious question in the case is whether or not this finding is supported by the facts. In considering this question, it is necessary to bear in mind the fact that the bank held ample security for the notes, and that it does not appear that the corporation was insolvent when the security was given, or that it was so given with a view to preferring the bank. In this respect the case presented by the evidence differs widely from Hilton v. Ernst, 38 App. Div. 94, 57 N. Y. Supp. 908, and Salt v. Ensign, 79 Hun, 107, 29 N. Y. Supp. 659, much relied upon by the respondent. In Salt v. Ensign an insolvent corporation, in contemplation of insolvency, sold and delivered goods to a third party, upon the agreement that the price thereof should be paid to an unsecured creditor in satisfaction of his debt. In Hilton v. Ernst, the Kilmer Company of which plaintiff was receiver, had assigned to defendant certain accounts as security for an indebtedness. One of these accounts had been collected by the officer of the Kilmer Company and the preceeds converted. The Kilmer Company on the verge of insolvency, assigned other accounts to take the place of the one which had been wrongfully collected. It was this last assignment which was dec'ared void, upon the rather narrow ground that the debt for which it was given was that arising out of the collec-

tion and conversion of the proceeds of the earlier security, and not the original debt for which the prior security had been given, and thus the case really turned on the point that security had been given in contemplation of insolvency for a debt not theretofore secured. It was held in Dutcher v. Imp. & Traders' Bank, 59 N. Y. 5, in a case arising under the Revised Statutes, that even in the case of a company known to its officers to be insolvent, a payment or sale made in the usual and ordinary course of business by the company, and one which would have been made in the same way if the company had been prosperous and solvent could not be said to have been made in contemplation of insolvency. In that case an insolvent bank had paid a check drawn upon it by a depositor. In Paulding v. Shrome Steel Co., 94 N. Y. 334 the validity of a chattel mortgage, given as security for a debt, was upheld, although executed on the very eve of insolvency, because it was simply the carrying out of an agreement previously made by the company to give such security, and was given in substitution of a prior mortgage which had been proved to have been defectively executed. The particular point in all of the foregoing cases applicable to the present is that they recognize the superior right of a creditor holding security given in the regular course of business, and not in contemplation of insolvency, to hold his security and realize upon it after insolvency, even if he thereby is paid his debt in full, and the unsecured creditors get nothing.

The position of the defendant on and prior to December 2, 1903, was that it held ample security for its loan to the Loftus Company, and had an absolute right to realize upon that security. We think that the act of Loftus & Co. in depositing on December 2, 1903, the cash received from the sale of its merchandise assets, and immediately checking out the amount to the defendant bank, and a few other favored creditors must be considered as a payment to the bank of the loan represented by the notes. But to the extent that the bank then held collateral in the shape of the mortgages executed by Mr. and Mrs. Loftus and by Russell, the bank was entitled to hold the securities until the debt was paid, even if thereby it received a larger proportion of its debts than other creditors of the company were able to realize. When the company tendered payment of the notes, the bank, having no knowledge of its insolvency, was justified in accepting the payment, and, having done so, was bound to return the collateral security as to which it had no further right or claim. It was by such payment, up to the value of the mortgages put in no better position than it had been before, but if now required to repay the money it will be in a much worse position, for plaintiff does not offer, nor does it appear that he is able to restore this security to the bank. We attach no importance to the fact that one mortgage apparently covered property of Mrs. Loftus, and that the other seems to have been the individual property of Thomas J. Loftus. As between the bank and the insolvent company, the mortgages were the property of the company. They had been given to the bank by the president of the company as collateral for the company's indebtedness. Thomas J. Loftus was both president and treasurer of the company, and evidently its active business manager. He had signed the notes, and the check, as he had a right to do in the name

of the company, and in its behalf had deposited the collateral. In dealing with him, the bank was dealing with the company, and in returning the security to him, it had returned it to the company.

In so far therefore as the check given to the bank on December 2, 1903, represented the value of the two mortgages then held by the bank as collateral security, we do not consider that the payment can properly be said to have been preferential. As to so much of the payment as exceeded the value of the two mortgages, a different question is presented. As to that the bank held no security except the indorsements of Mr. and Mrs. Loftus and the personal guaranty of Mrs. Loftus. So far as these are concerned the bank surrendered nothing, and will lose nothing if it is required to pay back the money to the receiver. The rule is that in cases where the creditor innocently receives payment from the principal debtor, which he is afterwards required to repay because it constituted an unlawful preference, the debt will not therefore be considered as having been paid so as to release the surety, but the creditor may pursue his remedy against the surety as if no payment had been made. Swarts v. Fourth Natl. Bank, 117 Fed. 1, 54 C. C. A. 387, and cases therein cited. Consequently the defendant bank, even if required to repay, so much of the $15,594.01 as was secured only by the indorsements and guaranty of Mr. and Mrs. Loftus will be put in no worse position than it would have been in if no payment had ever been made, but may still recover from the guarantors. Our conclusion is, therefore, that, in so far as the debt to the bank was secured by the two mortgages above referred to, up to the value of these mortgages, the payment on December 2, 1903, was not preferential and void, but was received in good faith and for a valuable consideration, to wit, the surrender of collateral security to the benefit of which the bank cannot now be restored, but as to the sum paid to the bank, not secured by the mortgages, the payment must be considered as preferential and void, the bank having surrendered no security therefore which is not now as available to it as it was before the debt was paid. It may be that in another action, upon proper proofs, the plaintiff can recover from defendant bank the $5,000 originally loaned to Thomas J. Loftus personally, and afterwards merged into the indebtedness of W. C. Loftus & Co.; but neither the allegations of the complaint or the evidence would justify a recovery upon that ground in the present action.

Judgment reversed, and new trial granted, with costs to appellant to abide the event.

PATTERSON, P. J., and CLARKE, J., concur.

INGRAHAM, J. I concur in the result, but I do not concur in what is said by Mr. Justice SCOTT as to the right of the plaintiff to recover any portion of this payment made to the defendant, for the reasons stated in my dissenting opinion in the case of Robert G. Perry. Trustee in Bankruptcy v. Van Norden Trust Company (decided herewith) 103 N. Y. Supp. 543.

McLAUGHLIN, J., concurs.