WRIGHT v. WILLIAM SKINNER MFG. CO.

SAME v. SKINNER.

(Circuit Court of Appeals, Second Circuit.   May 20, 1908.)

Nos. 262, 263.

1. BANKRUPTCY—VOIDABLE PREFERENCE—EVIDENCE CONSIDERED.

A creditor who received payment of his debt, amounting to some $4,000. on the day before bankruptcy proceedings were instituted against the debtor, *held* to have had reasonable cause to believe that a preference was intended, so as to render it voidable under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), where he admitted that he knew the debtor was hard pressed and without credit, and that he had himself been persistently pressing his own claim for several months.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 255–257.]

2. SAME—PREFERENCE VOIDABLE UNDER STATE STATUTE.

A payment of a debt by an insolvent New York corporation on the day before a petition in bankruptcy was filed against it with intent to prefer the creditor is voidable by its trustee under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3449), and the stock corporation law of New York (Laws 1892, p. 1838, c. 688, § 48), which makes void any payment made by a corporation when insolvent or when its insolvency is imminent with intent to prefer a creditor.

Appeal from the District Court of the United States for the Southern District of New York.

See 136 Fed. 694.

The defendants appeal from judgments entered against them in the District Court for the Southern District of New York on the 14th of August, 1907, for $570,46 in the first of the above entitled actions and for $3,685.22 in the second.

The actions were brought to set aside, as preferential and void, payments made to the defendants by W. C. Loftus & Co., a corporation, on the day preceding the filing of the petition in bankruptcy and when the corporation was insolvent. The questions involved in the two actions are the same.

Austin B. Fletcher and William P. S. Melvin, for appellants.

James, Schell & Elkus (Joseph M. Proskauer, of counsel), for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge.   These actions are brought to set aside as void, under sections 60a, 60b, and 67e of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562, 564 [U. S. Comp. St. 1901, pp. 3445, 3449]), certain payments made by the bankrupt to the defendants.

It is necessary for the trustee, in order to recover under section 60, to establish the following propositions:

First. That the payments were made within four months before the filing of the petition.

Second. That at the time of the payments the bankrupt was insolvent within the meaning of subdivision 15 of section 1 of the act (30 Stat. 544, c. 541 [U. S. Comp. St. 1901, p. 3419]).

Third. That the effect of the payments was to give the defendants a greater percentage of their debts than other creditors of the same class.

Fourth. That the defendants had reasonable cause to believe that it was intended by such payments to give them a preference.

The first, second and third of these propositions are unquestioned. In other words, it is admitted that Skinner, individually and as the representative of the Skinner Company received, on the day prior to the filing of the petition, preferential payments from the bankrupt corporation when it was insolvent.

The only debatable question, therefore, is—Did Skinner have reasonable cause to believe that a preference was intended? This was a question of fact for the trial court and, unless we are prepared to say that its finding in favor of the trustee is clearly against the weight of evidence, we should not set it aside. Not only do we think the conclusion of the trial judge was justified by the proof but we fail to see how he could have reached any other conclusion.

Without discussing the testimony in detail it is sufficient to say that it shows that for four years prior to receiving the preference in question, Skinner knew that Loftus was in a precarious financial condition. He had failed in 1899, had borrowed money until all his collateral was exhausted and had secured the loan in question by giving Skinner the equity of redemption in some stock pledged to a bank. All this Skinner knew. After Skinner became uneasy about his loan he began to dun Loftus systematically. He was unable to find him. His telephone messages were invariably answered: "Mr. Loftus is not here." Surely this conduct was enough to put Skinner on inquiry. He evidently considered the situation critical, for a few days before the failure he told Loftus that unless he squared the account he (Skinner) would put the matter in the hands of an attorney. Skinner further testified as follows:

"Q. You were afraid of the account all during the spring and summer of 1903?

"A. Yes, sir.

"Q. And your fear, I suppose, was based on the way he acted when you dunned him to get your money?

"A. Yes, sir.

"Q. Had you made any inquiries about him in the trade?

"A. He had a bad name, financially speaking; very few people would sell to him.

"Q. Was it the general opinion that he was insolvent?

"A. They were all afraid of him.

"Q. That was the result of your inquiries during the spring and summer of 1903?

"A. I made no inquiries.

"Q. When you went there during the summer and fall of 1903, did you try to get anything out of him more specifically as to what his condition was?

"A. Yes, sir. His general story was that a cheap tailor had gone by; was a thing of the past.

"Q. When did you first find out about his selling out?

"A. Saw it in the paper.

"Q. He did not tell you anything about it?

"A. No, he did not. He told me that he was going to sell out. I knew a long time before that that he was negotiating with some people, Hart, or some one here in the city; I am not sure who it was, and he was negotiating with other people.

"Q. Was your information during the summer that other people were not selling to him?

"A. Yes. I am very much surprised that he owed about $25,000.00 for merchandise.

"Q. Did you have any opinion as to whether or not Loftus was insolvent when you took the $4,000.00?

"A. I didn't ask. I knew that he was hard pressed, else he would have been borrowing money from me. By 'he' I mean W. C. Loftus & Co.; but he always assured me that he had plenty to pay his accounts, if he could sell it.

"Q. Your idea was that he was insolvent, but that his wife would pay up?

"A. I thought that he was in a very tight position, but I never thought that he would fail. My idea was that his wife would see him through."

We know of no reported case where the evidence tending to show actual knowledge was more cogent. To our minds it is inconceivable that Skinner could have received the $4,000 check on the day before the petition was filed without having reasonable cause to believe that he was receiving a preference over the other creditors. As the Court of Appeals for the Eighth Circuit said in Coder v. McPherson, 152 Fed. 951, 82 C. C. A. 91:

"Notice of facts which would incite a man of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would disclose."

See, also, Wetstein v. Franciscus, 133 Fed. 900, 67 C. C. A. 62; In re Andrews (D. C.) 135 Fed. 599; Sundheim v. Ridge Ave. Bank (D. C.) 138 Fed. 951, affirmed (C. C. A.) 145 Fed. 798; Collier on Bankruptcy (6th Ed.) 485; Loveland on Bankruptcy (3d Ed.) 561. We are also of the opinion that the preference was voidable under section 48 of the stock corporation law of New York (Laws 1892, p. 1838, c. 688) and section 67e of the bankruptcy act. Section 67e provides, inter alia, as follows:

"And all conveyances, transfers or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, territory or district in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt."

Upon this branch of the case we think the pleadings sufficiently present the issue and that nothing need be added to the opinion of the court in Wright v. Gansevoort Bank, 118 App. Div. 281, 103 N. Y. Supp. 548, where the precise point was decided in an action growing out of the failure in controversy.

The judgments are affirmed with costs.