## PENDER v. CHATHAM PHENIX NAT. BANK & TRUST CO.

### No. 360.

Circuit Court of Appeals, Second Circuit.

May 23, 1932.

Benjamin Siegel, of New York City (Edward I. Kaplan, of New York City, of counsel), for appellant.

Kaye, McDavitt & Scholer, of New York City (James S. Hays and Milton Kunen, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The trustee in bankruptcy of Morris Sugarman brought suit to set aside a payment of $3,500 made by the bankrupt to the defendant bank within four months of the bankruptcy. Upon the evidence adduced, all the elements of a preference voidable under section 60b of the Bankruptcy Act (11 USCA § 96) were found to exist except the last, namely, the requirement that the creditor "shall then have reasonable cause to believe" that the transfer would effect a preference. As to that issue the court below found in favor of the defendant. The correctness of this finding is the only question presented by the appeal.

Sugarman Bros., a partnership of which Morris Sugarman was a member, began business dealings with the defendant bank in 1924, but the account then opened, after continuing for several years, had been closed. On December 31, 1929, Abraham Sugarman withdrew from the firm, and thereafter the bankrupt continued the business as sole proprietor. On June 6, 1930, he opened an account with the defendant. On that date the bank loaned him upon his own notes $5,000 and on July 1st an additional $2,500. The line of credit granted was $7,-500 on his own paper and $12,500 on bills receivable. It was apparently understood that he should keep on deposit a balance equal to about 20 per cent. of the credit extended. Before opening the account the bank had obtained credit reports on the bankrupt as well as statements showing his general balance sheet at the close of the year 1929 and his trial balance as of April 30, 1930. While the bankrupt's statements disclosed a solvent condition, the credit reports running back to February showed him increasingly slow in payments. Shortly after June 17th the bank was warned by the Bank of America, where Sugarman had previously banked, that his balances there had dwindled until that bank had stopped extending credit. This was evidently the reason for Sugarman opening his account with the defendant. On June 20th, Mr. Debevoise, the defendant's vice president in charge of credits, noted in the bank's credit file that he did not consider this an attractive risk and that "extreme caution should be exercised." This advice seems to have been followed. Mr. Whitman, the assistant manager of the branch office in which the account was carried, repeatedly called Sugarman in and urged him to pay his trade bills more promptly and to increase his balances in the bank. Despite these remonstrances, matters did not improve. The credit reports showed constantly mounting overdue bills, and the report of July 30th disclosed that the National Credit Office had withdrawn all credit in view of slow payments. Meanwhile the bankrupt's bank balances were continually decreasing, and, according to Mr. Warner's testimony, uncollected funds were drawn on. On August 14th Mr. Debevoise again made a memorandum for the credit file in which he noted the action of the National Credit Office and the dwindling bank balance, mentioned that the bankrupt's explanation of his former partner's overdrawing account did not "hold water," and concluded with the statement that "this has gotten to be a very shaky credit and it would be my recommendation to get assigned accounts until we could completely work out of this risk." On the same day Mr. Whitman told the bankrupt that because of his failure to keep adequate balances he would have to pay his loan and make banking arrangements elsewhere. Over the bankrupt's protest the bank insisted, although the loan was not yet due as the bankrupt's three $2,500 notes matured, respectively, on October 1st and 6th and November 3d. On August 27th the bankrupt brought in some $3,600 of customer's paper which the bank discounted. The

bankrupt then drew his check for $3,500 in favor of the bank, and this sum was applied in satisfaction of the last maturing note and in partial payment of the note falling due on October 6th. The bank continued to press him for prepayment of the remainder of the loan, but, before anything further was obtained, the bankrupt, on September 30th, executed an assignment for the benefit of creditors. Thereafter and within four months of the August 27th payment an involuntary petition in bankruptcy was filed. The bankrupt testified that during all the year 1930 he was insolvent, and he admitted that his financial statements given to the bank were false.

None of the foregoing facts is controverted. The sole dispute is whether they gave the bank reasonable cause to believe that a preference would be effected by the payment. The District Judge expressed the opinion that the case was "pretty close," but concluded that the bank did not have reasonable cause to believe that its debtor was insolvent in the bankruptcy sense. With this conclusion we are unable to agree. The bank knew that for six months Sugarman had been increasingly slow in paying his bills, that his commercial credit rating had been withdrawn by the National Credit Office, that his bank balances had steadily dwindled, and that he would be without banking credit when forced to close his account with it. It had expressed dissatisfaction with Sugarman's explanation of his former partner's overdrawing account, and it resorted to the unusual procedure of requiring payment of its debtor's notes before they were due and out of discounted bills receivable. It realized that its loan was "very shaky," and was advised by Mr. Debevoise to get assigned accounts as security until it could work out of the risk. These circumstances raised more than suspicion of danger; we think they were enough to put the creditor upon inquiry touching the debtor's insolvency and that adequate inquiry would have disclosed his insolvency. In preference cases, notice of facts which would incite a man of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would have disclosed. See Wright v. William Skinner Mfg. Co., 162 F. 315, 317 (C. C. A. 2); Boston Nat. Bank v. Early, 17 F.(2d) 691, 692 (C. C. A. 1); Ridge Avenue Bank v. Studheim, 145 F. 798 (C. C. A. 3); Shale v. Farmers Bank, 82 Kan. 649, 109 P. 408.

The decree is reversed, and the cause remanded for entry of a decree in favor of the plaintiff.