Richard L. EISNAUGLE as Trustee in Bankruptcy of Schroeder Shoe Co.,

v.

Lester BLANK and Jerome G. Blank trading as Edward Blank Sons & Co.

Civ. No. 14405.

United States District Court
E. D. Pennsylvania.

Oct. 26, 1954.

---

Fred Wolf, Jr., Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for plaintiff.

Nathan Lavine, Miller, Adelman & Lavine, Philadelphia, Pa., for defendants.

CLARY, District Judge.

This is an action brought by the trustee in bankruptcy of a shoe manufacturing corporation under Section 60, sub. b of the Bankruptcy Act to recover certain allegedly preferential payments and the value of certain returned merchandise received by defendants from the corporation within four months of the date of the filing of an involuntary petition in bankruptcy by general creditors. Re-covery is sought under the provisions of Title 11 U.S.C.A. § 96, subs. a and b. Upon pleadings and proof, I make the following

### Findings of Fact

1. Plaintiff, Richard L. Eisnaugle, is the duly qualified and acting Trustee in Bankruptcy of Schroeder Shoe Company, a bankrupt corporation, located in Portsmouth, Ohio.

2. An involuntary petition in bankruptcy was filed against the Schroeder Shoe Company by general creditors in the United States District Court for the Southern District of Ohio, Western Division, on the 16th day of April 1952, and the corporation was adjudicated a bankrupt on May 27, 1952.

3. The United States District Court, Southern District of Ohio, Western Division, by Order dated October 3, 1952 authorized plaintiff to bring this action in this Court.

4. Individual defendants, Lester Blank and Jerome G. Blank, are copartners trading as Edward Blank Sons & Co., whose principal place of business is located in Philadelphia, Pennsylvania.

5. The Schroeder Shoe Company, a corporation, was at all material times engaged in the manufacture and wholesale disposition of women's shoes. The manufacturing plant of the corporation was located in Sciotoville, Ohio, which community is contiguous with Portsmouth, Ohio.

6. Defendant partners manufacture and sell leather used by shoe manufacturers.

7. The Schroeder Shoe Company had been a customer of defendants since April of 1949 and had made numerous purchases of leather after that time and during the period running to December 21, 1951.

8. All sales of Edward Blank Sons & Co. to the Schroeder Shoe Company were made on thirty day credit terms.

9. The last sale made to Schroeder Shoe Company, prior to those which are the subject of this dispute, was on September 4, 1951 in the amount of $451.75.

Payment of this amount was made on November 16, 1951.

10. The first sale involved in this dispute was made on November 9, 1951 in the amount of $691.02.

11. On or about December 17, 1951, defendants received Schroeder Shoe Company's check for $691.02 in payment of the above shipment. This check was postdated December 24, 1951.

12. Defendants deposited said check in their Philadelphia bank on December 24, 1951, and in due course the check was returned unpaid for the reason that there were insufficient funds in the drawer's Portsmouth, Ohio account.

13. On January 3, 1952, Lester Blank telephoned Mr. Schroeder, the President of and a very substantial stockholder in the bankrupt corporation, with regard to the returned check. Mr. Schroeder told defendant that there had been an oversight as to that check and instructed that it be redeposited. This was done on January 4, 1952.

14. The next attempted payment involved was a check of the Schroeder Shoe Company received by defendants on or about December 20, 1951 in the amount of $450. This was apparently intended as part payment on an indebtedness for leather purchased on November 15, 1951 in the amount of $1,288.29. This check was postdated December 28, 1951, and was deposited by defendants in their Philadelphia bank on December 27, 1951. This check was also returned on January 7, 1952, because of insufficient funds in the drawer's Portsmouth, Ohio account.

15. Lester Blank called Mr. Schroeder on the same day, with respect to the above check, and was told that a shipment of shoes had just been made for which payment was expected soon, and that there was nothing to worry about. Schroeder instructed Blank to redeposit the check but Blank told him he would be out to see him about it. Schroeder also told Blank that he expected money from a shipment of shoes to Oppenheim Collins in New York on which $26,000 was due and that the checks would be paid out of those monies.

16. The bankrupt had also made purchases from defendants on November 26, 1951 in the amount of $113.72, November 29, 1951 in the amount of $155.-87, December 13, 1951 in the amounts of $489.68 and $307.75, and one on December 21, 1951 in the amount of $200.82. All these amounts were entered as debits against Schroeder Shoe Company on the books of defendants as of the respective dates set out above.

17. On January 2, 1952, defendants received from the Schroeder Shoe Company a returned shipment of leather which was the same leather of the value of $200.82 which defendants had sent out under their book entry of December 21, 1951. Defendants accepted the returned shipment and entered the purchase price, $200.82, on their books as a credit in favor of the debtor.

18. On January 4, 1952, a like return of leather was made as set out in the finding immediately above. These returned goods were a portion of those which were shipped on December 13, 1951 and the shoe company was given credit for $64.66.

19. In pursuance of his statement to Schroeder Shoe Company, set out in Finding No. 15, Lester Blank traveled to Cincinnati, Ohio, on January 9, 1952, and on the following day traveled to Portsmouth, Ohio, arriving there early in the morning.

20. Blank first went to the National Bank of Portsmouth on which the aforesaid checks were drawn and at which bank the Schroeder Shoe Company maintained its only bank accounts.

21. Blank then and there presented the check for $450 which he still held for payment and was informed by a bank official that there were no funds on deposit from which the check could be paid and further that the prior redeposited check for $691.02 was being held and had not been paid for the same reason.

22. Lester Blank thereupon visited the factory of the shoe company and de-

manded of Dale Lloyd, a sometime book-keeper for the corporation, payment of all obligations to defendants, past due, presently due, and not yet due. He further stated that if payment of all such sums was not immediately forthcoming that he, Blank, would institute bankruptcy proceedings and shut down the operation of the business.

23. Dale Lloyd then called Schroeder to the factory and Lester Blank repeated his demands to the latter. He further stated to Schroeder that he knew the names of the principal supplier creditors of the corporation and the amounts due them. The information in that regard which he possessed and made known to Schroeder proved to be accurate.

24. Defendant, Lester Blank, then attempted to ascertain from Schroeder the exact amount of the total liabilities of the corporation and the value of its assets. This information was only partially furnished because the books of the corporation had not been kept up to date and did not then present a complete and accurate picture of the then current status.

25. Lester Blank was told by Schroeder that there was on that day no funds available to pay him but that a check was expected from the corporation's factor on the following day sufficient to satisfy Blank's demands, i. e., to be paid in full.

26. Accordingly, on January 11, 1952, Schroeder made out two corporation checks in favor of defendants, one for $1,000 and one for $500, gave them to Lester Blank, who, accompanied by Schroeder and Lloyd, went to the Portsmouth bank and received in exchange for the above a cashier's check in the amount of $1,948.90 in payment of the two checks and the one for $450 which he still held. The $1.10 difference involved was the bank's service charge for issuing the check. Blank was also then told that the $691.02 check would be paid through regular banking channels from this same factor's remittance and, in fact, this was done on January 12, 1952.

27. When Lester Blank was in the shoe factory, he had opportunity to observe and did observe that the manufacturing operations were being carried on at less than full or usual capacity. He was told by Schroeder that the corporation had insufficient raw materials to maintain full production and that this, in turn, was due to its inability to obtain such materials in the face of refusal of suppliers to extend credit.

28. Blank suggested to Schroeder that they meet in Boston during the following week and that Schroeder should there attempt to persuade some of the supplier creditors to compromise existing obligations, that Blank would try to assist in this effort and, if successful, would then consider putting some cash into the corporation to help it over its difficulties.

29. Upon receiving the cashier's check in Portsmouth, Blank departed for Philadelphia.

30. On January 14, 1952 Schroeder, along with Dale Lloyd and Lester Blank, met in Boston at which time the proposition of Blank coming to the aid of the corporation with cash, if existing creditors could be persuaded to compromise their claims at a sufficiently low figure, was tentatively discussed.

31. On the above occasion Schroeder delivered to Lester Blank a certified check of the corporation in the amount of $343.15 which fully discharged all remaining obligations of the corporation to defendants.

32. An audit to determine the exact condition of the Schroeder Shoe Company in the month of January, 1952, was made on or about February 4th or 5th, 1952, reflecting the conditions of the company as of January 19, 1952. This audit showed that Schroeder Shoe Company had total assets of slightly in excess of $74,000 on that date and liabilities in excess of $103,000.

33. Sales made by the corporation in the period between December 31, 1951 and January 19, 1952 amounted to about $21,000, while purchases amounted to

about less than $5,000. Adjustments, based on these transactions, to the January 19th audit with respect to inventory and estimated cost of sales demonstrate that as of December 31, 1951, the liabilities of Schroeder Shoe Company exceeded total assets by approximately $27,000.

34. The Schroeder Shoe Company was insolvent on December 31, 1951 and at all times thereafter.

35. Lester Blank on January 11, 1952 did not know as a fact that the Schroeder Shoe Company was insolvent.

36. John Schroeder, President of Schroeder Shoe Company, on January 11, 1952, did not know as a fact that the Schroeder Shoe Company was insolvent.

37. The several payments of the aforesaid amounts to Edward Blank Sons & Co. by the Schroeder Shoe Company were not intentional fraudulent preferences.

38. Lester Blank, a competent and intelligent businessman, on January 11, 1952, had information to put him upon inquiry touching the debtor's solvency. At that time a diligent inquiry would have disclosed that Schroeder Shoe Company was actually insolvent.

## Discussion

■■ The Findings of Fact in this case, set forth above, were made on a record wherein the testimony of the plaintiff was presented by deposition only and the defense was presented by witnesses, who appeared in open court, testified, and were cross-examined. The Court, therefore, had no opportunity to judge the demeanor and attitude of the absent witnesses. From the entire record, however, I have come to the conclusion that the plaintiff, the trustee in bankruptcy, has by a fair preponderance of the evidence established that the above referred to payments were voidable preferences under the provisions of Section 60, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. b. I am of the opinion that the evidence establishes that at the time Lester Blank collected the checks in question he had reasonable cause to believe that the financial condition of Schroeder Shoe Company was precarious and that the company was at that time insolvent. He then knew that certain checks which he had received were unpaid because of insufficient funds. While in the aggregate the sum total of these unpaid checks was not a large amount, it was direct notice to him of the company's financial difficulty. Added to that was the information given to him that the company was not maintaining and could not maintain full operations because of its precarious credit situation. He was told directly that operations had already been curtailed because other creditors had refused to extend the necessary credit to permit full operation. Under such circumstances the language of Circuit Judge Swan in the case of Pender v. Chatham Phenix Nat. Bank & Trust Co., 2 Cir., 1932, 58 F.2d 968, 970, states the applicable law:

" * * * In preference cases, notice of facts which would incite a man of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would have disclosed. * * *"

A reasonably diligent inquiry would have disclosed the insolvency of the company and the defendants were under a duty to make such an inquiry. The payments, therefore, constituted voidable preferences which the trustee in bankruptcy is entitled to recover. See Margolis v. Gem Factors Corp., 2 Cir., 1953, 201 F.2d 803.

■ As to the question of interest on the preferences, there is no testimony showing that any demand was made prior to the institution of suit. Therefore, interest will be allowed only from October 31, 1952, the date upon which suit was instituted in this Court. Waite v. Second Nat. Bank of Belvidere, Ill., 7 Cir., 1948, 168 F.2d 984, 4 A.L.R.2d 322.

## Conclusions of Law

1. This Court has jurisdiction of the parties and the subject matter of this action.

2. On January 10, 1952, and thereafter, Lester Blank had notice of facts

which, under similar circumstances, would incite a man of ordinary prudence to an inquiry of the financial condition of the Schroeder Shoe Company.

3. A reasonably diligent inquiry would have revealed to the defendants that the Schroeder Shoe Company was insolvent on January 10, 1952 and thereafter, and the defendants are charged with notice of such insolvency.

4. The payments made by the Schroeder Shoe Company to defendants on January 11, 1952 or thereafter in the amounts of $1,000, $500, $450, $691.02 and $343.15 were preferences as defined in Title 11 U.S.C.A. § 96, subs. a, b.

5. Under the facts found the Trustee in Bankruptcy is entitled to avoid these preferences and to recover the above stated amounts. Plaintiff-Trustee is entitled to judgment in the sum of $2,984.-17 with interest thereon from October 31, 1952 to date of payment, together with costs.